COLONIAL PENN GROUP, INC. and
Bay Loan and Investment Bank

v.

COLONIAL DEPOSIT COMPANY.

C.A. No. 86–0332 L.

United States District Court,
D. Rhode Island,
First Division.

March 5, 1987.

---

1. Under the frivolity standard of § 1915(d), the Court must take the plaintiff's allegations as true. However, as on a motion to dismiss, where the allegations themselves along with exhibits filed with the complaint reveal that the plaintiff is not entitled to relief under any set of facts, the Court may dismiss the complaint.

William R. Grimm, Providence, R.I., for plaintiffs.

James Purcell, Providence, R.I., for defendant.

## OPINION

LAGUEUX, District Judge.

This matter is before the Court on the motion of defendant, Colonial Deposit Company, (Deposit) to dismiss plaintiffs' complaint because of the existence of a prior proceeding between the same parties filed in the Providence County Superior Court for the State of Rhode Island. Reduced to its essential facts, this complaint alleges that Colonial Penn Group, Inc. (Penn) and Bay Loan and Investment Company (Bay Loan) are involved in a host of marketing services in the fields of insurance, investment advice, banking and real estate. According to the complaint Penn has used two service marks, "CP" and "Colonial Penn," in conjunction with the marketing of one or more of these services since 1967. It is conceded, however, that the "CP" mark was not registered with the United States Patent and Trademark Office until July 8, 1969, and the "Colonial Penn" mark was not registered until September 24, 1985.

The record indicates that Deposit is a loan and investment bank which was registered with the Rhode Island Department of Business Regulation under the name "Colonial Deposit Co." in 1976. Since that time, the record indicates that Deposit has held itself out to the public under its registered name in conjunction with the operation of its everyday business.

The present litigation apparently results from a number of advertisements placed by plaintiffs in various editions of The Providence Journal in March of 1986 after Penn had acquired Bay Loan. In these advertisements, plaintiffs offered their services to the public under the name "Colonial Penn/Bay Loan & Investment Bank." In April of 1986, Deposit filed a complaint in the Providence County Superior Court alleging that the use of the mark "Colonial Penn" "constitutes an unfair method of competition under Rhode Island common law and an infringement of the mark 'Colonial Deposit Company.'" Then in May of the same year, Penn and Bay Loan filed this suit in this Court requesting that the Court issue the following declaratory relief:

A. Plaintiffs have the right to advertise and sell their services under the "CP" and "Colonial Penn" marks.

B. Plaintiffs' advertising and offering for sale their services under the marks "CP" and "Colonial Penn" is not likely to cause confusion and is not a false representation.

C. The federally registered marks "CP" and "Colonial Penn" "have priority" over defendant's interest in the tradename "Colonial Deposit Company."

In addition to these three forms of relief, plaintiffs also request the Court "to enjoin" defendant from either "charging" or "interfering" with plaintiffs' right to advertise their services under the "CP" and "Colonial Penn" marks. Finally, in bringing this declaratory judgment action under 28 U.S.C. § 2201, plaintiffs assert that jurisdiction is conferred upon the Court under 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

Six days after this action was filed, Deposit moved to dismiss on the basis of the parallel proceeding abstention doctrine. Then, on July 10, 1986, Penn and Bay Loan petitioned this Court to remove the prior state court litigation to this forum under 28 U.S.C. § 1441. Deposit, in turn, filed a motion to remand the removed state proceeding to the state court on the grounds that this Court did not have federal question jurisdiction upon which removal could be based. In October of 1986, this Court granted Deposit's motion to remand. Following the Court's decision on the remand motion, oral argument was heard on Deposit's motion to dismiss this declaratory judgment action. That motion is now in order for decision.

Defendant's motion to dismiss presents two issues to the Court for consideration. First, whether a federal court should abstain from adjudicating a declaratory judgment action because of the existence of a parallel state court proceeding which raises the same issues as the federal action? Secondly, if abstention is appropriate in such a case, whether a state court defendant, who brings a federal declaratory judgment action which is dismissed in these circumstances, may reserve the right to litigate its alleged federal claims in federal court at

a later time? In presenting these issues for decision, Deposit asks the Court to exercise its discretionary powers and, thus, decline to assume jurisdiction in this matter. In this request, however, there exists the underlying assumption that the Court already has subject matter jurisdiction over this case. This is by no means clear. Prior to rendering a decision on these issues, then, it is necessary to determine whether this Court, in reality, has federal question jurisdiction over plaintiffs' declaratory judgment action.

Plaintiffs assert that this Court has subject matter jurisdiction to decide their declaratory judgment action under two provisions of the laws of the United States. The first is 15 U.S.C. § 1121 which reads as follows:

> The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or the lack of diversity of the citizenship of the parties.

The second is 28 U.S.C. § 1338(a) which states that "the district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."

In order to invoke the Court's federal question jurisdiction under these sections, however, plaintiffs must file an "action" which "arises under" either "Chapter 22" or "under any Act of Congress relating to .... trademarks." The "arising under" requirement contained in both these sections is a term of art which has received definitive interpretation by the United States Supreme Court under a third jurisdictional statute, 28 U.S.C. § 1331. That statute provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

Given the absence of any logical reason (or precedent thereupon) for distinguishing between the "arising under" requirement in the first two sections from that in § 1331, it follows that case law marking the boundries of § 1331 federal question jurisdiction is also applicable to § 1121 and § 1338(a). C. Wright, A. Miller & E. Cooper, 13B FEDERAL PRACTICE & PROCEDURE § 3561 (1984). Where case law indicates that the "arising under" requirement is not satisfied under § 1331, one can conclude that the same requirement present in § 1121 and § 1338(a) has also not been satisfied. With this assumption in mind, the Court proceeds to discuss the "arising under" requirements present in § 1121 and § 1338(a) in the context of declaratory judgment actions.

In *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950), the Supreme Court indicated that "the operation of the declaratory judgment statute is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." As a result of this interpretation of 28 U.S.C. § 2201, it is clear that any declaratory judgment suit must still "arise under" "Chapter 22" or "any Act of Congress ... relating to trademarks," as provided by § 1121 and § 1338(a) respectively. Whether federal question jurisdiction is present under these sections, in turn, is determined by application of the "well-pleaded complaint" rule. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 154, 29 S.Ct. 42, 44, 53 L.Ed. 126 (1908).

In the context of declaratory judgment actions, the "well-pleaded complaint" rule has two potential applications. The first application is where the plaintiff in the coercive suit is also the plaintiff in the declaratory judgment suit. In this application, one must determine if the plaintiff's claim in the declaratory judgment action is essentially an attempt to litigate defendant's affirmative defense in the coercive suit. *Skelly Oil*, 339 U.S. at 673, 70 S.Ct. at 879. Where this is the case, the complaint in the declaratory judgment action is

not "well-pleaded" and must be dismissed for lack of federal question jurisdiction. Dismissal under *Skelly Oil* will occur regardless of whether the claim in the coercive suit arises under state or federal law. The reasoning underlying a broad rule of dismissal in such cases derives from the purposes underlying the declaratory judgment statute itself.

The statute's purpose is to prevent prejudice to a party that may result were he to wait for an opposing party to bring a coercive suit on the matter in dispute. Concomitantly, the statute functions to further judicial economy by enabling a party who is potentially prejudiced to preempt the coercive suit by seeking declaratory relief on a determinative issue in the case. F. James & G. Hazard, CIVIL PROCEDURE 31 (1977); *but see, Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 15 n. 19, 103 S.Ct. 2841, 2849 n. 19, 77 L.Ed.2d 420 (1983) (the declaratory remedy was designed to permit adjudication of either party's claims of right). Where a plaintiff in the declaratory judgment suit is also the plaintiff in the coercive suit, it is clear he cannot be prejudiced by any delay since he can always litigate all issues in the coercive suit himself.

It is true that judicial economy may sometimes be furthered by speedy resolution of a determinative issue in the declaratory judgment action. This benefit, however, is undermined by two factors. Declaratory relief may not resolve the entire issue, thus presenting the potential for piece-meal adjudication of the case. *Declaratory Judgment and Matured Causes of Action*, 53 Colum.L.Rev. 1130, 1135 (1953). In addition, condoning use of the statute in an "offensive" manner, encourages parties to use the statute as a procedural tool for obstructing rather than expediting the judicial process. For example, in *Skelly Oil* plaintiff in the coercive suit brought the declaratory judgment action purely in an attempt to obtain jurisdiction which ordinarily would not have been present. *See*, M. Redish, FEDERAL COURTS, 358 (1983); *see also, Byrnes v.*

*Faulkner, Dawkins & Sullivan,* 362 F.Supp. 864, 867 (S.D.N.Y.1973) (plaintiff's bringing declaratory judgment action after filing coercive suit was "an ingenious attempt to avoid removal").

The second application of the well-pleaded complaint rule in the declaratory judgment context is where the defendant in the coercive suit brings the declaratory judgment action. In this application, one examines the nature of the plaintiff's claim in the coercive suit in order to determine if federal question jurisdiction is present in the declaratory judgment action. *Public Service Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 242, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952) (dictum). Where the claim in the coercive suit contains a federal cause of action then the declaratory judgment suit is properly before the court under 28 U.S.C. § 2201. The reasoning behind this rule is that if the court were to dismiss the declaratory judgment suit when the coercive suit properly invokes the court's federal question jurisdiction, that would be penalizing the defendant for merely using the declaratory judgment statute in the manner in which it was intended. In other words, the court would be dismissing a declaratory judgment action which is brought to prevent needless litigation of the coercive suit and to prevent any prejudice to the defendant were he to wait for the plaintiff to bring the coercive suit. *See,* F. James & G. Hazard, CIVIL PROCEDURE 31 (1977). Although there is still a question of whether the court has federal question jurisdiction (since the declaratory judgment claim is being brought to resolve what is really an affirmative defense in the coercive suit), the Supreme Court has apparently approved this narrow "exception" to the rule in *Skelly Oil,* at least in cases where the declaratory judgment plaintiff is not a state. *Franchise Tax Bd.,* 463 U.S. at 20–21, 103 S.Ct. at 2851–2852; *see, Greenfield & Montague Transp. Area v. Donovan,* 758 F.2d 22, 26–27 (1st Cir.1985).

The present case does not fit precisely into either of these two applications of the well-pleaded complaint rule to declaratory judgment actions. This is because the state court defendants brought their declaratory judgment action in reaction to (not in anticipation of) the state court suit. Unlike the federal court plaintiff in *Skelly Oil,* plaintiffs here have a colorable argument that in bringing the declaratory judgment action they are attempting to resolve a federal issue which confronts them as defendants in the coercive suit. In addition, it is possible that plaintiffs here are attempting to alleviate some prejudice resulting from delay in the state proceedings by seeking an expeditious resolution of a determinative issue in federal court.

These arguments, however, are undermined by the reactive nature of plaintiffs' declaratory judgment suit as exemplified by contrasting their use of the statute to that of the plaintiff in *Wycoff.* Unlike the plaintiff in *Wycoff,* plaintiffs here are not solely using the statute to preempt the coercive suit or to avoid prejudice resulting from delay. The latter conclusion is apparent from the order in which the suits in the present case were filed. On April 10, 1986, Deposit filed suit against Penn and Bay Loan in the Providence County Superior Court. Then on May 30, 1986, Penn and Bay Loan filed a declaratory judgment action in this Court. Clearly, at the time this second suit was filed plaintiffs already had a forum in which to resolve all the issues which they request this Court to decide. Thus, plaintiffs have not been prejudiced as a result of any delay in Deposit's bringing the coercive suit. Nor is plaintiffs' declaratory judgment action brought as a means of preempting the coercive suit in its entirety. Rather, the suit before this Court was brought as a procedural maneuver in response to the state court action.

Whether the reactive nature of plaintiffs' suit necessitates application of the rule in *Skelly Oil* is a question that the Court need not decide at this time. Even if the Court *assumes* that the *Wycoff* "exception" to the rule in *Skelly Oil* is applicable in the present case, the Court would still not have federal question jurisdiction to hear this case. As indicated above, the rule in *Wycoff* requires that one examine

"the character of the threatened action, and not of the defense," in order to determine whether the court has federal question jurisdiction. The "impending action" in the present case is the coercive suit that was filed in state court by Deposit in April of 1986. The Court, however, has already discussed this issue in ruling on plaintiffs' attempt to remove Deposit's state court action to this Court.

■ In that ruling, as here, it is apparent that the sole basis for Deposit's claim against Penn and Bay Loan "arises" from the alleged violation of unfair competition and infringement laws of the state of Rhode Island. This is evident from the pleadings in the case. Deposit's "mark" is registered only under the laws of the State of Rhode Island, while plaintiffs' marks are registered only under the federal trademark laws. Deposit, then, simply has no federal cause of action to bring against Penn and Bay Loan in the Providence County Superior Court. It follows that since the coercive suit does not arise under "Chapter 22" or "any Act of Congress relating to ... trademarks," this Court does not have federal question jurisdiction over plaintiffs' declaratory judgment action.

Having addressed the preliminary issue of whether the Court has subject matter jurisdiction over plaintiffs' declaratory judgment action, the Court turns to the issue of whether a federal court should abstain from adjudicating a declaratory judgment action because of the existence of a parallel state court proceeding which raises the same issues as the federal action. In considering this issue, the Court necessarily assumes that it has jurisdiction to entertain plaintiffs' declaratory judgment action. Upon this assumption, it follows that the Court, in the exercise of its discretion, may abstain from further consideration of this matter.

In *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, (1st Cir.1986), the First Circuit Court of Appeals recognized that "a federal court's duty to exercise its jurisdiction is relaxed in the declaratory judgment context." The *Fuller* court indicated that this

"relaxed" standard consisted of balancing the five factors which the Supreme Court has used to determine whether abstention is appropriate in a non-declaratory judgment setting. *Id.* at 308–309 n. 3. These factors were stated as follows:

(1) The assumption by the state court of jurisdiction over a res.

(2) The inconvenience of the federal forum.

(3) The avoidance of piecemeal litigation.

(4) The relative progress of the suits in the state and federal forums.

(5) Whether federal law provides the rule of decision.

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19, 23–24, 103 S.Ct. 927, 938, 940–941, 74 L.Ed.2d 765 (1983). It is apparent that the first and second factors have no application in the present case. This case does not involve a res; the federal court for the District of Rhode Island is situated a few blocks from the Providence County Courthouse, and thus, no inconvenience to the parties is presented in terms of geographic location. The Court, then, is left with balancing the third, fourth and fifth factors against one another.

Plaintiffs contend that "the presence of exclusively federal-law issues and matters of federal interest mandate that this Court exercise its jurisdiction. This action arises under the Lanham Act." As previously indicated, plaintiffs assessment of the federal question in this case is not sound. However, assuming that plaintiffs cause of action does arise under the Lanham Act, this factor would weigh in favor of the Court's exercising its jurisdiction. This factor, however, must still be balanced against the third and fourth factors and is not determinative of any conclusion as plaintiffs contend.

In considering the fourth factor, the Court must compare the relative progress of the suits in the state and federal forums. It is evident that this factor weighs slightly against the exercise of jurisdiction. The suit before this Court is only in its forma-

tive stages. Plaintiffs' complaint has been filed and the Court is now hearing defendant's motion to dismiss that complaint. No discovery has been had by either party at this juncture in time.

In contrast, Deposit's suit against Penn and Bay Loan was filed in the Providence County Superior Court two months prior to the institution of the suit before this Court. Penn and Bay Loan have long since filed an answer to Deposit's complaint, and have apparently agreed with Deposit to conduct expedited discovery on the matter pending in state court. Where, then, the proceeding in the state court has progressed further than that in the federal court, a federal court should be chary in proceeding on the matter. To do so would be judicially uneconomical in light of the time and effort already expended on the matter by the parties and the state courts. *See, Fuller,* 782 F.2d at 311.

More importantly, the *Fuller* court indicated that the fifth *Moses H. Cone* factor—the desirability of avoiding piecemeal litigation—is entitled to "great weight" in assessing the propriety of the district court's dismissal. *Fuller,* 782 F.2d at 309. Although this case, unlike *Fuller,* is based upon alleged federal question rather than upon diversity jurisdiction, the policy underlying this factor is the same in either instance. As the *Fuller* court indicated:

> It would be unthinkable that everytime a state (here, commonwealth) court defendant became dissatisfied with that court's provisional resolution of some issue and there was diversity of citizenship, it could rush over to the federal courthouse in the hope of obtaining a more favorable determination. Such practice, if ordinarily permitted, could complicate and fragment the trial of cases ...

*Fuller,* 782 F.2d at 309–310.

■ The concerns expressed by the *Fuller* court are no more evident than in the present case. After Deposit filed its complaint in the Providence County Superior Court the matter proceeded rapidly along. Penn and Bay Loan filed their answer and agreed to expedited discovery; a hearing

on Deposit's motion for preliminary injunction was set for June 26, 1986. Then, apparently, dissatisfied with the way in which Penn and Bay Loan were faring in the state court, plaintiffs' attorney filed a complaint for declaratory judgment in this Court. Such conduct, however, completely defeats the purpose of the declaratory judgment statute. As explained above, the declaratory judgment statute was enacted to prevent prejudice resulting from delay, not as a means of preventing a forum from expeditously resolving the matter already before it. In addition, condoning such conduct would unnecessarily fragment and complicate matters pending before the state courts. *See, Fuller,* 782 F.2d at 309–310. Given the "great weight" which must be attached to this factor along with the problems associated with the fourth factor, the Court concludes that even if federal law provides the rule of decision, the Court must abstain from further consideration of this case.

Finally, the question arises whether a state court defendant, who brings a federal declaratory judgment action that is dismissed as a result of the abstention doctrine, may reserve the right to litigate its alleged federal claims in federal court at a later time. This question was answered by the First Circuit in *Fuller* as follows:

> *England* did not involve a *state* court litigant like Fuller who was seeking to reserve its federal claims for a federal tribunal. Rather, *England* involved a litigant who, suing first in *federal* court, was remitted by that court to a state court on abstention grounds.

782 F.2d at 312 (emphasis in the original).

■ Like *Fuller,* Penn and Bay Loan are not litigants who originally established their rights to have their case adjudicated in federal court. Rather, Penn and Bay Loan are state court litigants who subsequently filed an action in federal court under the declaratory judgment statute. For the policy reasons discussed above with respect to reactive declaratory judgment litigants, Penn and Bay Loan are not entitled to reserve the right to litigate their

# 1254

alleged federal claims in this Court after their complaint has been dismissed.

In summary, for the reasons outlined above, the case presently before the Court is dismissed.

*It is so Ordered.*