**COLONIAL PENN GROUP, INC., and Bay Loan and Investment Bank, Plaintiffs, Appellants,**

**v.**

**COLONIAL DEPOSIT COMPANY, Defendant, Appellee.**

No. 87–1254.

United States Court of Appeals, First Circuit.

Heard Sept. 14, 1987.

Decided Dec. 2, 1987.

William R. Grimm with whom Gerald J. Petros and Hinckley, Allen, Tobin & Silverstein, Providence, R.I., were on brief, for plaintiffs, appellants.

John E. Bulman with whom James E. Purcell and Tillinghast, Collins & Graham, Providence, R.I., were on brief for defendnat, appellee.

Before COFFIN, ALDRICH and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

Colonial Penn Group, Inc. and Bay Loan and Investment Bank appeal from a judgment of the United States District Court for the District of Rhode Island. The district court dismissed their complaint on the grounds that it lacked jurisdiction to entertain the action, and in the alternative, that abstention was appropriate in the event that jurisdiction was proper, 654 F.Supp. 1247. We agree that the district court lacked jurisdiction, and therefore affirm.

## I.

Appellant Colonial Penn Group, Inc. is a Delaware corporation headquartered in Philadelphia. It provides various financial and related services throughout the United States, including banking, insurance underwriting and marketing. The company has continuously used the service marks "C.P." and "Colonial Penn" in its nationwide business since at least 1967. The marks appear on stationery, advertisements, office forms, and various other official documents and papers. Colonial Penn Group, Inc. registered its "C.P." mark for insurance underwriting with the United States Patent Office in 1969, and its "Colonial Penn" mark in 1985.

The company provides its services through a number of wholly-owned corporate subsidiaries. Appellant Bay Loan and Investment Bank is a subsidiary of Colonial Penn Group, Inc. located in Rhode Island. Bay Loan has adopted the "C.P." and "Colonial Penn" marks in its banking services throughout the United States.

Appellee Colonial Deposit Company ("Deposit") was chartered in Rhode Island as a loan and investment bank in 1976. Deposit offers its banking services in New England under the trade name "Colonial Deposit Company."

On April 10, 1986, Deposit filed a complaint in the Providence County Superior Court, naming Bay Loan and "Colonial Penn Insurance" as defendants. The state action did not originally name Colonial Penn Group, Inc. as a defendant. The state complaint alleged that state common law trade name protection existed for the "Colonial Deposit Company" mark as utilized in the banking business in Rhode Island, and that the defendants' use of the "Colonial Penn" mark constituted both an unfair method of competition under Rhode Island common law and an infringement of the "Colonial Deposit Company" mark. The complaint requested that the state court enjoin the defendants from utilizing the "Colonial Penn" mark "in any of its dealings with the general public as a loan and investment bank."

On May 23, 1986, the state defendants answered Deposit's complaint, asserting the affirmative defense of a prior federal right to the use of "Colonial Penn" in Rhode Island. The parties thereafter stipulated to expedited discovery, and the state court scheduled June 26, 1986 as the date for a hearing on a preliminary injunction. Interrogatory answers and production requests were exchanged, and some depositions took place.

On May 30, 1986, one week after Bay Loan had filed its answer in state court, Colonial Penn Group, Inc. and Bay Loan (hereinafter collectively referred to as "Colonial Penn") filed the present action in federal court in Rhode Island. Colonial Penn brought this action for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Jurisdiction was alleged under section 39 of the Trademark Act of July 5, 1946 (the Lanham Act), as amended, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1338 and 1391.

The pertinent allegations of Colonial Penn's federal complaint are: that Colonial Deposit had "claimed" that the "Colonial Penn" service mark would cause a likelihood of confusion as to services of Colonial Deposit, and would infringe Deposit's own mark (¶ 22); that Colonial Penn's marks did not infringe on the term "Colonial Deposit Company" (¶ 23); that Colonial Penn's use of its marks in Rhode Island predated the use of any mark of Colonial Deposit (¶ 24); that the "actual controversy" between the parties is that Colonial Deposit "claims"

that its rights in its tradename were infringed by use of the "Colonial Penn" mark, whereas Colonial Penn asserts that its marks do not so infringe any rights of Colonial Deposit (¶ 25); and that Colonial Deposit's "claims" represent a threat to Colonial Penn's use of *its* federally registered marks (¶ 26).

Of particular importance to our resolution are Penn's prayers for relief, which we reproduce in relevant part verbatim:

WHEREFORE, plaintiffs pray that this Court will declare the rights and legal relations of the parties in respect of the controversy set forth above and to that end demand that this Court adjudge and decree:

A. That plaintiffs have the right to advertise, offer for sale, and sell banking services under the CP and Colonial Penn service marks either alone or with other words or design elements.

B. That the advertising, offering for sale and sale by plaintiffs of banking and other services under such service marks does not infringe any rights of defendant in and to the tradename "Colonial Deposit Company," is not likely to cause confusion or mistake, and is not a false designation of origin or a false representation.

C. That plaintiffs' rights to use the service marks CP and Colonial Penn have priority over defendant's interest in the tradename "Colonial Deposit Company."

D. That defendant be permanently enjoined from charging plaintiffs with a violation of defendant's rights by reason of plaintiffs' advertising, offering for sale or sale of banking and other services under such service marks.

E. That defendant be permanently enjoined from interfering in any manner with plaintiffs' exercise of their right and privilege to advertise, offer for sale or sell banking and other services under such service marks.

Colonial Deposit subsequently amended its state court complaint to replace "Colonial Penn Insurance" with Colonial Penn Group, Inc. as a named defendant. Colonial Penn removed the state action to federal court, and Deposit moved for a remand.

The district court remanded the state action; that decision is not on appeal here. Deposit also moved to dismiss the federal action on the abstention grounds established in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

The district court decided *sua sponte* that it lacked jurisdiction to consider the federal complaint. It also held, in the alternative, that even if jurisdiction could be entertained, federal abstention was appropriate pursuant to the teachings of *Colorado River* and its progeny. The district court entered judgment for Deposit and Colonial Penn appealed.

## II.

The district court treated this case as a declaratory judgment action. Although Colonial Penn insists that this does not accurately describe their complaint, we think that it does. *See* Sections IIIB, IIIC, *infra.*

■ Federal jurisdiction does not lie simply because relief is requested under the federal Declaratory Judgment Act. " '[T]he operation of the Declaratory Judgment Act is procedural only.' *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240 [57 S.Ct. 461, 463, 81 L.Ed. (1937)]. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). The Act merely expands the relief available through litigation; it does not affect parties' substantive rights. *See Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 15–17, 103 S.Ct. 2841, 2849–50, 77 L.Ed.2d 420 (1983).

A corollary to this principle is that " 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.' " *Franchise Tax Board,* 463 U.S. at 16, 103 S.Ct. at 2849 (quoting 10A C. Wright, A.

Miller, & M. Kane, *Federal Practice and Procedure* § 2767, at 744–45 (2d ed. 1983)).

In the typical case of this sort, where the declaratory judgment action is brought as an *anticipatory* defense to an expected state "enforcement" (or "coercive") action, this circuit has adopted the rule set forth in the following Supreme Court dictum:

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. *This [jurisdiction] is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened action.*

*Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952) (emphasis supplied). *See Greenfield and Montague Transportation Area v. Donovan,* 758 F.2d 22, 26–27 (1st Cir.1985) (adopting *Wycoff* dictum). The Supreme Court also seems to have adopted the *Wycoff* rule as an established tenet. *Franchise Tax Board,* 463 U.S. at 16 & n. 14, 103 S.Ct. at 2849 & n. 14.

In the instant case, appellants' claim of federal right is indeed "in reality in the nature of a defense" to appellee's state court action. Colonial Penn seeks, in essence, to use the declaratory judgment mechanism to "engage in a preemptive strike," *see Greenfield and Montague,* 758 F.2d at 26, against Colonial Deposit's state

common law complaint. *See* Section III, *infra.*

In contrast to the usual *Wycoff* case, the defense here is not even "anticipatory"; it is in response to an actual state court action already commenced.[1] Colonial Deposit's state suit was not merely "impending" or "threatened"; it was very real and ongoing. It is thus very simple to apply the *Wycoff* test. In short, we must determine the character of the state court action, to see whether *that* action "itself involve[s] a claim under federal law." In making this determination, we must apply the venerable "well-pleaded complaint" rule. Whether a particular case "arises under" federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914). It is immaterial that Colonial Penn would likely assert its rights under the federal Lanham Act as a defense to Deposit's common law claims. The well-pleaded complaint rule focuses solely on the elements of the plaintiffs' legal claims; federal jurisdiction is not established merely by the presence of a federal defense. *See Franchise Tax Board,* 463 U.S. at 10 & n. 9, 103 S.Ct. at 2846 & n. 9. "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. (1936). This is so even if both parties were to admit that the federal defense was the primary or only question truly at issue in the case. *Franchise Tax Board,* 463 U.S. at 14, 103 S.Ct. at 2848.[2]

---

1. Colonial Penn argues that it was not technically a defendant in the state court action when it filed the federal action. But even if Colonial Penn could persuade us that this technicality was of more than dubious significance, it would be of no import in this context. The most that Colonial Penn could then claim would be that it *anticipated* being joined as the real party in interest in the state action. Such a case is precisely that which the *Wycoff* rule is meant to cover.

2. In this case, Colonial Deposit did not explicitly anticipate in its state court complaint a federal defense by Colonial Penn. But even if it had, this would not be sufficient to invoke federal jurisdiction. *See Louisville and Nashville Rail-*

■ This test would seem to settle the issue against Colonial Penn, since it is not disputed that Deposit's state law action is based entirely on state common law. Indeed, if the well-pleaded complaint analysis revealed a federal basis for Deposit's state court action, then removal of Deposit's state action would have been appropriate here. But it is not argued, nor could it be, that it was improper for the district court to remand that litigation to the Rhode Island courts.[3] Colonial Deposit's state complaint does not establish any federal cause of action, and thus Colonial Penn cannot rely on the Declaratory Judgment Act to provide federal jurisdiction.

## III.

Colonial Penn argues, however, that it is unfair to characterize its federal action merely as a defense to Deposit's state law action. It contends that its requested declaratory relief would have a broader effect than simply precluding the state law proceeding. It further insists that its complaint seeks substantive injunctive relief in addition to the declaratory judgment, thus placing it in a posture outside the province of the *Wycoff* rule. We disagree.

## A.

■ We first consider the question of whether any justiciable federal declaratory action is asserted independent of the federal defense to Deposit's state court action. This requires a close look at the nature of the relief requested in Colonial Penn's complaint. In its brief, Colonial Penn characterizes its requested declaratory relief as "confirming its affirmative right under the Lanham Act to use the ... marks in interstate commerce." Paragraph A of Penn's prayer for relief seeks a declaration "[t]hat plaintiffs have the right to advertise, offer for sale, and sell banking and other services under the CP and Colonial Penn service marks...." This request, for a general declaration of federal protection for the service marks, is not supported by any alleged case or controversy which would give rise to such relief. In fact, the Lanham Act provides no cause of action which would authorize such an injunction.

Paragraph B requests a declaration that the use of Colonial Penn's marks "does not infringe any rights of defendant in and to the tradename 'Colonial Deposit Company,' is not likely to cause confusion or mistake, and is not a false designation of origin or a

---

road Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

**3.** The Supreme Court has identified a category of cases that provides an "exception" of sorts to the usual strictures of the well-pleaded complaint rule. Where a federal statutory scheme "is so powerful as to displace entirely any state cause of action" in the area, then any suit in that area "is purely a creature of federal law," even where the plaintiff pleads exclusively nonfederal causes of action. *Franchise Tax Board*, 463 U.S. at 23, 103 S.Ct. at 2853. In such a case, "if a federal cause of action *completely preempts* a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law," *id.* at 24, 103 S.Ct. at 2854 (emphasis added), even if state law would provide a cause of action in the absence of the federal statute. *Id.* at 23, 103 S.Ct. at 2853. *See also Hernandez–Agosto v. Romero–Barcelo,* 748 F.2d 1, 3 (1st Cir.1984) (pre-emption only applies where federal argument is "so important that it is an inextricable part of the [state] plaintiff's *affirmative* case") (emphasis in original).

It cannot be argued that the Lanham Act has completely preempted state common law service mark protection. *See Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 372 n. 3 (1st Cir. 1980). Thus, a state-based action for protection of such common law marks is not analogous to the sort of labor contract action, *see Avco Corp. v. Aero Lodge 735,* 376 F.2d 337, 340 (6th Cir. 1967), *aff'd,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Franchise Tax Board,* 463 U.S. at 22–24, 103 S.Ct. at 2852–54 (explaining *Avco* exception), which is *necessarily* federal in nature. *See Hunter Douglas Inc. v. Sheet Metal Workers Int'l Ass'n, Local 159,* 714 F.2d 342, 346 (4th Cir.1983) (distinguishing trademark and labor contract cases; only latter is "preemptively federal"); *La Chemise Lacoste v. Alligator Co., Inc.,* 506 F.2d 339, 346 (3rd Cir.1974) (distinguishing Lanham Act from § 301 of Labor Act; former does not pre-empt state regulation of marks), *cert. denied,* 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975). Though the Lanham Act may provide Colonial Penn with a federal defense that would preclude *enforcement* of Deposit's state common law service mark protection, an *action* to enforce that common law protection is not itself pre-empted by the Lanham Act. *Cf. Franchise Tax Board,* 463 U.S. at 26, 103 S.Ct. at 2855.

false representation." Paragraph C seeks a declaration that the plaintiff's rights to its service marks "have priority over defendant's interest in the tradename 'Colonial Deposit Company.'" While these paragraphs mirror the form of a typical prayer for declaratory relief in a federal patent or trademark case, upon closer inspection it can be seen that on the facts of this case, they assert no justiciable federal claim.

█ In the typical federal trademark or patent declaratory judgment action, a potential infringer seeks a declaration that the defendant's *federal* rights will not be infringed by the plaintiff's actions, or that the defendant's patent or mark is invalid. Such declaratory relief is proper in such circumstances so that the parties' respective rights can be determined before any extensive expenditures of time and money are made; otherwise, the plaintiff would be dissuaded from entering a market for fear of encountering an infringement action somewhere down the line.[4]

Such declaratory judgment actions clearly are permissible. *See Franchise Tax Board*, 463 U.S. at 19 n. 19, 103 S.Ct. at 2851 n. 19. The Supreme Court has explicitly noted that a such a practice does not violate the *Wycoff* and well-pleaded complaint rules, because "if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Id.* at 19, 103 S.Ct. at 2851. In this case, however, Colonial Penn cannot invoke the Declaratory Judgment Act in this manner, because the rights of Deposit concerning which Penn seeks a determination are *state*-created rights. This difference distinguishes this action from those cases cited by Colonial Penn, *e.g., Pizitz, Inc. v. Pizitz Mercantile Co. of Tuscaloosa, Inc.*, 467 F.Supp. 1089 (N.D.Ala.1979), where plaintiffs sought a declaration that they would not infringe a *federal* right of the defendants. Thus, Colonial Penn's complaint fails to state a claim for declaratory relief which is cognizable under the Declaratory Judgment Act.

## B.

█ Colonial Penn's requested injunctive relief consists of permanently enjoining Deposit "from charging plaintiffs with a violation of [Deposit's] rights" as a result of Penn's use of its service marks, and "from interfering in any manner with plaintiff's exercise of their right and privilege" to use those marks. Appellants' Complaint for Declaratory Relief ¶¶ D and E.

It is helpful to identify another sort of relief that is *not* being sought here. Penn is not claiming that its federal rights to the "C.P." and "Colonial Penn" marks are infringed by Deposit's use of the "Colonial Deposit Company" mark. It is undisputed that the federal courts would have jurisdiction under the Lanham Act, 15 U.S.C. § 1116, to grant an injunction preventing violation of Colonial Penn's service mark, provided that Penn could prove the elements of such an infringement. At oral argument, counsel for appellants contended that § 1116 provides jurisdiction in this case. But even if appellant's failure to rest on that section, in either its complaint or its brief to this court, did not preclude reliance on that section here, invocation of § 1116 would nonetheless be unavailing. Colonial Penn has failed to plead a justiciable claim that there has been any "violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116.

The only alleged "violations" that Colonial Penn asserts as the basis for injunctive relief appear in paragraphs 22 and 25 of its complaint. In those pleadings, Penn explicitly contends that the "actual controversy" between the parties consists of Deposit's "claims" that Penn's use of the "Colonial Penn" mark infringes Deposit's state law rights to the "Colonial Deposit Company"

---

**4.** Even in this sort of case, however, there must be a substantial threat of a federal infringement action by the declaratory judgment defendant in order to establish the "actual controversy" that gives rise to a cause of action under the Declara-

tory Judgment Act. *See Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 196 (1st Cir.1980); *Brisk Waterproofing Co. v. A. Belanger & Sons*, 209 F.2d 169, 170 (1st Cir.1954).

mark.[5] These "claims" cannot, without any indication or assertion to the contrary, refer to anything *but* Deposit's state law action. Certainly, Colonial Penn has failed adequately to plead that *its* marks are threatened or infringed by any other action independent of that litigation.[6] Indeed, Penn has conceded that Deposit's claims constitute the alleged "threat to [Colonial Penn's] continued use of [its] federally registered service marks." Appellants' Complaint for Declaratory Judgment ¶ 26. Nothing alleged in Colonial Deposit's state action raises any issue concerning Colonial Penn's general rights to its marks; indeed, the state action does not even implicate Colonial Penn's rights in any context other than the alleged conflict with Colonial Deposit's Rhode Island common law service mark.

█ Thus, we have returned full circle to the unavoidable conclusion that Colonial Penn's federal action is, in essence, merely a defensive maneuver in response to Deposit's state law action. The so-called injunctive relief prayed for is nothing more than a request that Deposit be enjoined from continuing its state court action. This relief is, in effect, no more than that which is requested by way of declaratory relief. We disagree with Colonial Penn's contention that, because of the requested "injunctive" relief, its complaint retains "vitality in the absence of the litigation in the state action." Appellants' own complaint reveals the weakness of this argument. The document is titled "Complaint for Declaratory Judgment," and is brought under the Federal Declaratory Judgment Act. *See* Complaint for Declaratory Judgment § 4. Most important, no specific section of the Lanham Act is invoked that would confer jurisdiction to grant injunc-

tive relief for the amorphous sort of "infringement" alleged by Colonial Penn here.

The federal cause of action is thus revealed for what it truly is, *viz.*, a prayer for declaratory relief. And, as we have shown, the declaratory relief sought is in essence merely a defense to Colonial Deposit's state action, over which the federal court has no jurisdiction. Even though Colonial Penn's Lanham Act rights might be the central issue in the state case, there is no reason to think that the state courts cannot decide federal statutory issues in a satisfactory manner. *Greenfield and Montague Transportation Area v. Donovan*, 758 F.2d 22, 27 (1st Cir.1985).

### C.

As a final effort to establish that the federal court has jurisdiction over its claims for "affirmative and coercive relief," appellant relies on the authority of cases such as *Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323 (2d Cir. 1982), *aff'd sub nom. Arcudi v. Stone & Webster Engineering Corp.*, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), and *Rath Packing Co. v. Becker*, 530 F.2d 1295 (9th Cir.1975), *aff'd sub nom. Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). In those cases, plaintiffs were subject to state regulatory schemes concerning labor benefits and meat packing, respectively. Plaintiffs brought actions in federal court alleging that the state regulations as applied to them were pre-empted by federal statutory schemes. In each case, the circuit court ruled that there was federal jurisdiction to hear actions seeking to declare the state statutory regulations invalid on the basis of federal pre-emption, despite the fact that

---

**5.** Appellant proffers no argument, nor could it, that *any* justiciable controversy exists as to its "C.P." mark. Summary dismissal was certainly warranted as to that portion of the action which concerns the "C.P." mark.

**6.** At oral argument, appellant's counsel argued that Deposit had gone before both the Rhode Island Board of Banking Corporation and the FDIC with complaints about use of the "Colonial Penn" mark. Penn is estopped from arguing at

this point that such actions establish a cause of action for infringement under the Lanham Act, because they failed even to allege any such events in the proceedings below. But even if it had made such a showing below, we have not been alerted to any basis in the Lanham Act for characterizing such administrative complaints as actions sufficient to establish a service mark infringement.

no particular jurisdictional statute applied other than the Declaratory Judgment Act.

■ In recent years, the Supreme Court has, in three separate footnotes, approved of this jurisdictional practice. *See Lawrence County v. Lead–Deadwood School Dist.*, 469 U.S. 256, 259 n. 6, 105 S.Ct. 695, 698 n. 6, 83 L.Ed.2d 635 (1985); *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983); *Franchise Tax Board*, 463 U.S. at 20 n. 20, 103 S.Ct. at 2850 n. 20. The Court has explained that "a person subject to a scheme of federal regulation may sue in federal court to enjoin application to him of conflicting state regulations, and a declaratory judgment action by the same person does not necessarily run afoul of the *Skelly Oil* [well-pleaded complaint] doctrine." *Franchise Tax Board*, 463 U.S. at 20 n. 20, 103 S.Ct. at 2850 n. 20. The same day that the *Franchise Tax Board* case was decided, the Court did in fact uphold jurisdiction in such a case, *Shaw*, 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14, reasoning that such jurisdiction emanated from the long-established doctrine of *Ex parte Young*, 209 U.S. 123, 160–62, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908), that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. The resultant rule, that concurrent jurisdiction to hear declaratory actions alleging federal pre-emption of statutory regulations is permissible, had been tacitly established in prior Supreme Court cases where such jurisdiction was recognized as appropriate. *See, e.g., Lake Carriers' Ass'n v. MacMullen*, 406 U.S. 498, 506–08, 92 S.Ct. 1749, 1755–56, 32 L.Ed.2d 257 (1972). In addition, in *First Federal Savings & Loan, Boston v. Greenwald*, 591 F.2d 417, 423 n. 8 (1st Cir.1979), this court approved of such jurisdiction, specifically distinguishing *Wycoff* despite the common existence in both cases of a prior state enforcement action by the federal declaratory defendant.[7]

■ These cases, and the jurisdictional standards which they elucidate, are inapposite to the present case. Colonial Penn is not challenging a state regulatory system on the grounds that it is preempted by a parallel yet conflicting federal body of law. Penn is merely asserting that it has a federally protected mark that protects it against state common law infringement liability. In each of the cases cited by appellant, the defendants were representatives of the state regulatory body. *See also Southern Pacific Transportation Co. v. Public Utilities Comm'n of the State of California*, 716 F.2d 1285, 1288 (9th Cir. 1983) (applying *Shaw* footnote 14 and *Franchise Tax Board* footnote 20), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). Jurisdiction over actions for declarations of pre-emption can logically only be asserted where a state official is the defendant. Pre-emption rationale thus is unavailing to appellant. Colonial Penn is not subject to any state regulatory system, let alone one that may be pre-empted by a federal statutory scheme.

---

7. Colonial Penn argues that this series of cases provides an exception to the usual constraints of the *Wycoff* and well-pleaded complaint rules, and that this so-called exception should apply to the instant case. Penn points to the fact that in some of these cases, such as *Greenwald* and *Rath*, the federal pre-emption action was filed subsequent to state enforcement actions instituted in state court by the federal defendant in state court. But this similarity alone does not sweep these cases under the ambit of the *Wycoff* doctrine. As both the *Greenwald* and *Rath* courts pointed out, the simple fact of the prior state court action does not without more trigger *Wycoff* analysis. *Greenwald*, 591 F.2d at 423 n. 8; *Rath*, 530 F.2d at 1303–06. By way of contrast to *Wycoff*, in neither *Rath* nor *Greenwald* was the federal action "*merely* a defense to the state court action[ ]." *Rath*, 530 F.2d at 1305 (emphasis added). In each case, the state regulatory scheme affected the federal plaintiffs in a manner that was allegedly proscribed by the federal provisions quite independently of the state court enforcements actions against them; plaintiffs had a right to the federal forum "*before* the institution of the state court actions." *Id.* (emphasis added). The federal actions thus did have "a vitality of [their] own," *Greenwald*, 591 F.2d at 423 n. 8, and would retain that "vitality in the absence of the litigation in state court." *Rath*, 530 F.2d at 1305. In contrast, Colonial Penn has here "created a federal controversy where none existed [and] is seeking an adjudication of a claim which is essentially meaningful only when pleaded as a defense to the particular pending state court action[ ]." *Rath*, 530 F.2d at 1306.

We conclude that if Colonial Deposit had never filed or threatened state court proceedings against Colonial Penn, Penn would have had no basis for its claims in federal court. Because those state common law proceedings do not themselves present a claim "arising under" any federal law, federal jurisdiction is therefore lacking, and Penn's federal case was properly dismissed.[8]

*Affirmed.*

---

**8.** Because we have concluded that the district court lacked jurisdiction over this action, we need not address that court's alternative ruling that *Colorado River* abstention is appropriate here. A court cannot logically abstain from consideration of a case over which it has no jurisdiction in the first instance.