**MAINE CENTRAL RAILROAD COMPA-NY and Springfield Terminal Railroad Company, Plaintiffs,**

v.

**RAILWAY LABOR EXECUTIVES' ASSOCIATION, Defendant.**

Civ. No. 87–0177–P.

United States District Court, D. Maine.

Feb. 16, 1988.

John Spelman, Andrew O. Schiff, Philadelphia, PA, Charles S. Einsiedler, Jr., Elizabeth S. Pearce, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, for plaintiff.

Cabanne Howard, Deputy Atty. Gen., Thomas D. Warren, Sr. Asst. Atty. Gen., Augusta, ME, for defendant State of Maine.

John O'B. Clarke, Jr., Richard S. Edelman, Highsaw & Mahoney, Washington, DC, Craig J. Rancourt, Biddeford, ME, for RLEA.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

GENE CARTER, Chief Judge.

Plaintiffs in this action, both subsidiaries of Guilford Transportation, Industries, Inc., are parties to an intracorporate lease arrangement that has been authorized by the Interstate Commerce Commission (ICC) under 49 U.S.C. § 10505. They seek a declaratory judgment that Maine's Railroad Employee Equity Act, 26 M.R.S.A. §§ 2071–2075, which applies to such lease transactions, is unconstitutional. Plaintiffs also seek an order enjoining Defendant and others from enforcing the Maine Act. Defendant with this motion argues that the case should be dismissed for three reasons: (1) that Plaintiffs lack standing to bring the suit against Defendant or, more precisely, that Defendant is not a proper defendant; (2) that the suit is not ripe for adjudication; and (3) that this Court lacks subject matter jurisdiction to hear the case. The Court agrees that jurisdiction is lacking and will grant the motion to dismiss.

The Maine Act challenged by Plaintiffs deals with hiring priorities in the event that one entity obtains from a financially related entity the right to operate a rail line through purchase, lease, or otherwise. *Id.* § 2072. Priority is to be awarded first under "federal law, employee protection obligations imposed by law, regulation or contracts which require the new operator to select employees of the prior operator or existing or future collective bargaining agreements." *Id.* § 2072(1). Next, priority is to be accorded to those holding seniority rights on the line to be operated, *id.* § 2072(2), and finally to unem-

ployed railroad workers in the area in which the line is to be operated and then within the United States. *Id.* § 2072(3). The Act also provides a presumption of qualification to work for the new employer on the part of those performing work on a railroad being transferred. *Id.* § 2073. A private right of action to enforce the hiring priorities is provided in section 2074 to any person deprived of a hiring right provided in § 2072. The Act further provides that either the lessor, assignor or former owner shall provide for retraining assistance to employees entitled to hiring priority who are unable to obtain positions in the new rail operation. *Id.* § 2075.

Plaintiffs challenge the Act on the grounds that it is preempted by the Interstate Commerce Act and is therefore violative of the Supremacy Clause of the United States Constitution. Specifically, Plaintiffs assert that the Maine Act is preempted by 49 U.S.C. § 11341(a), which provides for exemption from state law for a carrier participating in an approved or exempted transaction "as necessary to let that person carry out the transaction,"[1] and by sections 11343(a)(2) and 11347, which impose labor protective conditions covering employees affected by lease transactions.

Plaintiffs also assert that the Maine Act violates the contract clause of the United States Constitution and denies them equal protection and due process under the Fourteenth Amendment to the United States Constitution. It is clear from the challenge brought that Plaintiffs are attempting to utilize a federal declaratory judgment proceeding to defeat operation of a state law.

■ The Supreme Court rejected such a challenge in *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), stating:

Where a complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal law defense before the state court begins the case under state law.

*Id.* at 247–48, 73 S.Ct. at 242–43. *See also Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). In this case Plaintiffs seek a declaration of their claimed federal right, preemption, in order to block potential state court actions based on the Maine Act. Although the nature of the defenses is patently "federal," such preemptive strikes are generally barred. *Greenfield and Montague Transportation Area v. Donovan*, 758 F.2d 22, 27 (1st Cir.1985).

Despite the continued vitality of the *Skelly –Wycoff* well-pleaded complaint rule, *see Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d

---

1. Section 11341(a) of the Interstate Commerce Act provides that:

   The authority of the Interstate Commerce Commission under this subchapter is exclusive. A carrier or corporation participating in or resulting from a transaction approved by or exempted by the Commission under this subchapter may carry out the transaction, own and operate property, and exercise control or franchises acquired through the transaction without the approval of a State authority. A carrier, corporation, or person participating in that approved or exempted transaction is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that person carry out the transaction, hold, maintain, and operate property, and exercise control or franchises acquired through the transaction.

229 (1st Cir.1987), there exists another line of cases in which the Supreme Court has expressly stated that "a person subject to a scheme of federal regulation may sue in federal court to enjoin application to him of conflicting state regulations, and a declaratory judgment action by the same person does not necessarily run afoul of the *Skelly Oil* doctrine." *Franchise Tax Board v. Laborers Vacation Trust,* 463 U.S. 1, 20 n. 20, 103 S.Ct. 2841, 2851 n. 20, 77 L.Ed.2d 420 (1983); *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983); *Lawrence County v. Lead–Deadwood School District,* 469 U.S. 256, 259 n. 6, 105 S.Ct. 695, 697 n. 6, 83 L.Ed.2d 635 (1985). Plaintiffs assert that under this line the alleged conflict between the Maine Act and the Interstate Commerce Act raises an independent federal question, not just a defense to a state law claim, and that jurisdiction in this Court is appropriate under the federal question jurisdictional statute, 28 U.S.C. § 1331. The Court, taking guidance from the recent opinion by the Court of Appeals in *Colonial Penn,* 834 F.2d 229, must disagree.

■ The Supreme Court in *Shaw* found the basis for federal question jurisdiction such as that sought here in the *Ex parte Young* doctrine, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), under which federal courts may hear suits to enjoin state officials from interfering with federal rights.[2] Characterizing this line of cases, the Court of Appeals has pointed out that, in each of them, the defendants were representatives of the state regulatory body. *Colonial Penn,*

834 F.2d at 237. The Court concluded, in *dictum,* that "jurisdiction over actions for declarations of pre-emption can logically only be asserted where a state official is the defendant." *Id.* In this case, as in *Colonial Penn,* the defendant is not a state official.[3] Presumably, the reason for this is that the Maine Act does not provide for state enforcement or for civil or criminal penalties. Without the possibility of enforcement by the state, the Court finds that the Maine Act is not the type of conflicting regulation which would give the plaintiff a federal cause of action with vitality of its own, in the absence of the feared litigation in state court. *See Colonial Penn,* 834 F.2d at 237 n. 7 (quoting *Rath Packing Co. v. Becker,* 530 F.2d 1295 (9th Cir.1975)); *aff'd sub nom. Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

Although considerations of jurisdiction blur with the justiciability concept of ripeness or concreteness in this analysis, an examination of *Rath* makes plain that it is not the mere existence of allegedly conflicting regulations which provides federal jurisdiction but rather the existence of an actual controversy engendered by the conflict. In *Rath,* sections of the California Business and Professional Code *had been applied* to plaintiff who sought both a declaration that the statutes were in conflict with provisions of the federal Wholesome Meat Act of 1967 and an injunction against their enforcement. The *Rath* court determined that the declaratory judgment action was not premature or merely a defense to the state court actions. In-

---

2. As the Court stated in *Shaw:*

The Court's decision today in *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1 [103 S.Ct. 2841, 77 L.Ed.2d 420] (1983), ... does not call into question the lower courts' jurisdiction to decide these cases. *Franchise Tax Board* was an action seeking a declaration that state laws were not preempted by ERISA. Here, in contrast, companies subject to ERISA regulation seek injunctions against enforcement of state laws they claim *are* preempted by ERISA, as well as declarations that those laws are preempted.

It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. *Ex parte Young,* 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908). A plaintiff who seeks injunctive relief from state regulation, on the ground that

such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.... This Court, of course, frequently has resolved preemption disputes in a similar jurisdictional posture....

*Shaw,* 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14. *See also Lawrence County v. Lead–Deadwood School District,* 469 U.S. 256, 259 n. 6, 105 S.Ct. 695, 697 n. 6, 83 L.Ed.2d 635 (1985).

3. The State of Maine has intervened as a defendant to defend the constitutionality of the statute, but it has no affirmative enforcement role under the statute.

stead, the federal issue arose independently of the state court actions by virtue of the sell-off of some of plaintiff's products by California officials acting under the California statutes. *Rath,* 530 F.2d at 1305.

The *Rath* court examined the *Wycoff* decision in depth, and distinguished it, explaining that the Supreme Court, in denying federal jurisdiction in *Wycoff,*

> was applying its concerns that the controversy was not ripe for adjudication by pointing out a declaratory plaintiff may not create a controversy by seeking to have a federal court adjudicate federal defenses he might assert in a proceeding before a state court or administrative tribunal which is not ripe, but which is merely threatened or impending.

*Rath,* 530 F.2d at 1305.[4]

The *Rath* court buttressed this conclusion by reference to specific language in *Public Utilities Commission of California v. United States,* 355 U.S. 534, at 538–39, 78 S.Ct. 446, at 450, 2 L.Ed.2d 470 (1958):

> The Commission has plainly indicated an intent to enforce the Act; and [the] prohibition of the statute is so broad as to deny the United States the right to ship at reduced rates unless the Commission first gives its approval. The case is, therefore, quite different from *Public Service Commission of Utah v. Wycoff Co.,* . . . where a carrier sought relief in a federal court against a state commission in order 'to guard against the possibility,' . . . that the Commission would assume jurisdiction. Here the statute limits transportation at reduced rates unless the Commission first gives approval. The controversy is present and concrete—whether the United States has the right to obtain transporta-

tion service at such rates as it may negotiate or whether it can do so only with state approval.

*Rath,* 530 F.2d at 1305 n. 13.

■ When viewed in light of the justiciability requirement of ripeness or concreteness, the logic of permitting jurisdiction over actions for declaration of preemption and for injunctions based on such declarations only when a state official is the defendant, *see Colonial Penn,* 834 F.2d at 232, becomes clear, and the key to resolution of the seeming conflict between the *Wycoff* and *Shaw* lines of cases is provided. The allegedly conflicting regulations in this case do not present the concrete controversy required to present an independent federal issue. There is the possibility that the Maine Act will never be enforced, for its enforcement is entirely discretionary with the private individuals given the exclusive cause of action under the Act. In contrast, when a state official is charged with enforcing a challenged state statute, the uncertainty of enforcement may be diminished in the circumstances of the specific case to the point where the conflict between the state and federal regulations are present and concrete, since both can be said to apply, at the moment, to the Plaintiff. There may be no need for some action by an essentially uncontrollable third party, not the state or its representative, before the state regulation can be effective.[5]

Plaintiff argues that the former employees provided with a cause of action under the Maine Act are like private attorneys general standing in the place of a state official to enforce the Act, and therefore a suit for an injunction against enforcement of the Act should be maintainable.[6] The Court cannot

---

4. In *Wycoff* a state regulatory commission was the defendant and the lack of concreteness of the controversy stemmed not from lack of likelihood of enforcement but from failure of plaintiff to allege any specific conflict in the federal and state regulatory systems. The complainant did "not ask a judgment that the Commission is without power to enter any specific order or take any concrete regulatory step." *Wycoff,* 344 U.S. at 244, 73 S.Ct. at 240. The effect, however, was the same as having a specific allegation of conflicting regulations without reasonably certain and immediate expectation of enforcement.

5. The Court recognizes, of course, that state officials with enforcement authority have discretion in determining when to enforce any particular legislative enactment and that not all laws or regulations will be uniformly enforced.

6. Since the individual employees are not defendants before this Court, the boundaries of the jurisdiction analysis again become blurred into another of the justiciability arguments raised by Defendant: that Plaintiffs have no standing or, specifically, that RLEA is not an appropriate defendant in this suit. Since its resolution is not

agree despite the fact that an individual plaintiff's successful suit under the Act would presumably vindicate an express safety concern of the state legislature. *See* Emergency Preamble, S.P. 505–L.D. 1529. If the legislature had wanted to assure the enforcement of its policy, it could have provided for enforcement by a state official. It chose not to do so, thus making it possible that the Act will never be applied to Plaintiffs.[7]

Without a representative of the state or of a state regulatory body as a defendant, the Court cannot say that the Maine Act affects the Plaintiffs in this action in a way allegedly proscribed by federal law "independently of the state court enforcement actions against them." *Colonial Penn,* 834 F.2d at 237, n. 7. The federal action does not have vitality of its own, and the claim Plaintiffs seek to adjudicate will become "meaningful 'only when pleaded as a defense to [a] particular pending state court action.'" *Id.* (quoting *Rath,* 530 F.2d at 1306). Since this action does not, as alleged, arise under the Constitution and laws of the United States, there is no basis for the assertion by this Court of federal question jurisdiction under 28 U.S.C. § 1331. As no other basis of jurisdiction is asserted, this action must be dismissed. Plaintiffs will be free to raise their preemption defense in state court as soon as a person granted a priority under the statute seeks relief for violation of the priority rules in the state court.

Accordingly, it is *ORDERED* that this action be, and it is hereby, *DISMISSED.*

---

essential to disposition of this matter in its present posture, the Court will not now address this intricate issue.

7. The Court is aware that the possibility of treble damages under the Act provides a strong incentive to potential plaintiffs under the Act to seek relief. Such an incentive, however, does not impose a duty tantamount to that of a public official charged with enforcing the law and cannot be said to insure enforcement.