**GREENFIELD AND MONTAGUE
TRANSPORTATION AREA, et
al., Plaintiffs, Appellants,**

v.

**Raymond J. DONOVAN, Secretary,
Dept. of Labor, et al., Defendants,
Appellees.**

No. 84–1547.

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1984.

Decided March 29, 1985.

D. Christopher Ohly, Baltimore, Md.,
with whom Joseph S. Kaufman, Melnicove,
Kaufman, Weiner & Smouse, P.A., Balti-
more, Md., Edward W. Pepyne, Jr., Walder
& Pepyne, P.C., Geoffrey A. Wilson, J.
Nicholas Filler and Trudel, Bartlett, Barry,
Filler & Wilson, Greenfield, Mass., were on
brief for appellants.

Christine R. Whittaker, Washington,
D.C., with whom Richard K. Willard, Act-
ing Asst. Atty. Gen., Washington, D.C.,
William F. Weld, U.S. Atty., Boston, Mass.,
and John F. Cordes, Civil Div., Dept. of
Justice, Washington, D.C., were on brief
for appellees.

Jeffrey Freund, Washington, D.C., with
whom Bredhoff & Kaiser and Earle W.
Putnam, Gen. Counsel, Amalgamated Tran-
sit Union, Washington, D.C., were on brief
for Amalgamated Transit Union, amicus
curiae.

Before CAMPBELL, Chief Judge,
BOWNES, Circuit Judge, and MALETZ,*
Senior Judge.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiffs Greenfield and Montague
Transportation Area ("GMTA") and Frank-

---

* Of the United States Court of International    Trade, sitting by designation.

lin Regional Transportation Authority ("FRTA") brought this action in the district court to enjoin the United States Department of Labor from acting as an arbitrator in a labor dispute between plaintiffs and certain aggrieved employees. The Department of Labor had been designated a "fallback" arbitrator in the disputes resolution clause of the Rural Transportation Assistance Agreement between plaintiffs and the Commonwealth of Massachusetts. The district court dismissed the complaint holding that the Department's participation as an arbitrator was not subject to judicial review. We affirm but for a different reason.

## I. FACTS

Plaintiffs are two local public transit authorities in Massachusetts. In 1978, both entities entered into agreements with the Massachusetts Department of Transportation which, in coordination with the United States Department of Transportation, administers a rural transit assistance program providing federal financial aid to lo-

cal transit authorities under the Surface Transportation Assistance Act of 1978, 49 U.S.C. § 1614 ("STAA"). Under these agreements, plaintiffs have been receiving federal funding for their operations.

As a condition of such assistance, STAA requires all grant applicants to make arrangements to protect the interests of employees affected by the federal funding. The Secretary of Labor is responsible for certifying that these arrangements are "fair and equitable" and that they meet the other requirements set out in section 13(c) of the Urban Mass Transportation Act of 1964, 49 U.S.C. § 1609(c) ("UMTA"),[1] which are applicable to rural grants under the STAA. A similar provision has been incorporated into Massachusetts law. *See* Mass.Gen.Laws ch. 161B, § 8(k).[2]

In practice, the Secretary prepares a "Special Section 13(c) Warranty" establishing the arrangements which the Secretary has decided in advance are sufficient to meet the requirements of the statute. This

**1.** This section provides:

It shall be a condition of any assistance under section 1602 of this Appendix that fair and equitable arrangements are made, as determined by the Secretary of Labor, to protect the interests of employees affected by such assistance. Such protective arrangements shall include, without being limited to, such provisions as may be necessary for (1) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise; (2) the continuation of collective bargaining rights; (3) the protection of individual employees against a worsening of their positions with respect to their employment; (4) assurances of employment to employees of acquired mass transportation systems and priority of reemployment of employees terminated or laid off; and (5) paid training or retraining programs. Such arrangements shall include provisions protecting individual employees against a worsening of their positions with respect to their employment which shall in no event provide benefits less than those established pursuant to section 11347 of title 49. The contract for the granting of any such assistance shall specify the terms and conditions of the protective arrangements.

**2.** This statute reads:

As a condition of any assistance to a private carrier operating under lease, contract, or

other arrangement with the Authority, the rights, benefits, and other employee protective conditions and remedies of the Urban Mass Transportation Act of 1964, as amended (P.L. 88–365) as determined by the Secretary of Labor, shall apply for the protection of the employees affected by such assistance. Pursuant to said Urban Mass Transportation Act, the terms and conditions of a fair and equitable employee protective arrangement pursuant to this paragraph shall be a proper subject of collective bargaining and arbitration with the labor organizations that represent such employees. Such protective arrangement shall include, without limitation, provisions for the continuing employment or reemployment of those employees who are, or may be, displaced or otherwise affected by such assistance, paid training and retraining programs, preservation of all employment and retirement rights and interest, and any other protections which are necessary or appropriate to minimize the injury to such persons, provided, however, that any such protection shall not be detrimental to the employment or retirement rights and interests of any other persons affected by such assistance. The contract, lease, or other arrangement for the granting of any such assistance to a private carrier shall specify the terms and conditions of, the protective arrangements.

warranty is inserted into the agreements and has to be accepted or otherwise negotiated by the applicants before they receive any federal funds.

The "Special Section 13(c) Warranty" involved in this case, which appeared in the agreement between the Commonwealth and the federal Department of Transportation, and which was also included in plaintiffs' separate agreements with the former, contained a provision outlining the method for resolving any future labor disputes arising under the agreements. This provided that the Department of Labor would act as a fall-back arbitrator[3] in case the parties failed to reach an agreement on the procedure for settling a labor dispute. It read,

> Any dispute or controversy arising regarding the application, interpretation, or enforcement of any of the provisions of this arrangement which cannot be settled by and between the parties at interest within thirty (30) days after the dispute or controversy first arises, may be referred by any such party to any final and binding disputes settlement procedure acceptable to the parties, or in the event they cannot agree upon such procedure, to the Department of Labor or an impartial third party designated by the Department of Labor for final and binding determination. The compensation and expenses of the impartial third party, and any other jointly incurred expenses, shall be borne equally by the parties to the proceeding and all other expenses shall be paid by the party incurring them.

From 1978 to 1981, pursuant to federal requirements that they provide special transportation for the elderly and the handicapped, plaintiffs provided these services to the elderly through an independent contractor, Mount Grace Regional Transportation Corporation ("Mt. Grace"). The contracts between plaintiffs and Mt. Grace also incorporated the terms of the Special

Section 13(c) Warranty promulgated by the Secretary of Labor, including the quoted disputes resolution clause.

In 1981, both plaintiffs terminated their contracts with Mt. Grace. GMTA undertook to furnish directly the services formerly provided by Mt. Grace, and it subcontracted with FRTA to furnish similar services to that corporation as well. Thereafter, between May 29 and August 28, 1981, 16 persons employed or formerly employed by Mt. Grace filed claims with the Department of Labor, alleging that they had been adversely affected by the federal financial assistance received by GMTA and FRTA, that they were entitled to the protective benefits of the Special Section 13(c) Warranty, and that they had been unable to agree with plaintiffs upon any procedure to settle the dispute. They requested that the Department of Labor assume jurisdiction conforming to the grievance provisions of the agreement. The Secretary of Labor complied with this request, designating an employee to act as arbitrator.

Plaintiffs challenged the jurisdiction of the Labor Department, asserting that the UMTA did not authorize the Secretary, as part of the protective arrangements, to set himself up as "fall-back" arbitrator in mass transit labor disputes. They also claimed that the Mt. Grace employees were not entitled to the protection of the Special Section 13(c) Warranty. On June 14, 1982, and again on June 20, 1983, the Secretary of Labor rejected plaintiffs' jurisdictional challenge in interim determinations. The Secretary concluded that the dispute was properly handled by the Department of Labor under the terms of the agreement in light of the parties' failure to agree to any other procedure. The Secretary declined to address plaintiffs' second argument at that point, reasoning that it was not jurisdictional in nature. A hearing was scheduled.

---

**3.** Plaintiffs contend that the disputes resolution mechanism is not correctly characterized as "arbitration" because this term is not mentioned in the clause. However, we are content to follow the district court's nomenclature, especially as

the precise characterization of this procedure is irrelevant to plaintiffs' challenge that the UMTA does not authorize the Department of Labor to act as an alternative disputes resolution mechanism.

Plaintiffs then filed the present action in the United States District Court of the District of Massachusetts asserting that the Secretary of Labor lacked authority under the UMTA to require them to submit to his arbitration and seeking declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and the Declaratory Judgment Act, 28 U.S.C. § 2201. By agreement, the arbitration proceedings were stayed pending the court's decision. (They have since been held.) The Mt. Grace employees filed a motion to intervene which was allowed by the district court.

On December 23, 1983, the Secretary moved to dismiss the complaint for lack of jurisdiction and failure to state a cause of action. The motion was referred to a magistrate, who recommended that it be allowed on the grounds that 1) the Secretary of Labor was being sued qua arbitrator and thus enjoyed arbitral immunity from the suit; 2) the Secretary of Labor's determination to act under the contract was not "agency action" reviewable under the APA and, in any event, was not final for review purposes; and 3) there was no federal question jurisdiction because the Secretary was acting under the contract and not under any federal law. Plaintiffs objected.

The district court dismissed the complaint, but on different grounds. Assuming that plaintiffs' allegations that the Secretary had exceeded his statutory authority in setting himself as a fall-back arbitrator did indeed present a substantial federal question, the court held that the Secretary's action was not reviewable under the APA because it was agency action committed to agency discretion by law.

GMTA and FRTA appeal from this decision, challenging both the reasoning adopted by the district court and that of the magistrate. The Secretary answers these contentions. Also, the Amalgamated Transit Union, AFL–CIO, has filed an amicus brief, urging affirmance on the grounds stated by the magistrate.

## II. DISCUSSION

The district court relied on federal cases holding that the Secretary's decision whether or not to certify a particular arrangement as "fair and equitable" under section 13(c) of the UMTA is "committed to agency discretion" within the meaning of the APA, 5 U.S.C. § 701(a)(2), and is not, therefore, reviewable by the courts. *See Local Division 732, Amalgamated Transit Union v. Metropolitan Atlanta Rapid Transit Authority,* 667 F.2d 1327, 1343 (11th Cir.1982); *Kendler v. Wirtz,* 388 F.2d 381, 383–84 (3d Cir.1968); *City of Macon v. Marshall,* 439 F.Supp. 1209, 1223 (M.D.Ga. 1977). *But see Amalgamated Transit Union v. Donovan,* 582 F.Supp. 522, 528–29 (D.D.C.1984) (certification reviewable, but review is limited to abuse of discretion). *Cf. Local Division 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 634 (1st Cir.1981) (recognizing need for flexibility and discretion by the Secretary in section 13(c) certifications), *cert. denied,* 457 U.S. 1117, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982). We agree with plaintiffs that those cases are not necessarily dispositive here. Plaintiffs are not directly challenging the Secretary's certification of the adequacy of these protective arrangements. Rather they simply contend the Department of Labor is barred from playing an arbitrator's role in these protective arrangements. They point to evidence in the UMTA's legislative history which, in their view, suggests that the Department's involvement as a contract arbitrator is illegal.

But while we tend to agree with plaintiffs that the agency discretion exception is not a bar, the Supreme Court's reasoning in *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union,* 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982), leads us to conclude that the complaint fails to set out a substantial federal question capable of sustaining federal jurisdiction under 28 U.S.C. § 1331. In *Jackson,* the Court held that suits involving section 13(c) agreements and collective bargaining contracts between UMTA aid recipients and transit unions are "governed by state law applied in state courts," not by federal law applied in

federal courts. *See id.* at 29, 102 S.Ct. at 2210. In so doing the Court overruled several circuit court decisions to the contrary, including one by this circuit. *See Local Division 714, Amalgamated Transit Union v. Greater Portland Transit District,* 589 F.2d 1 (1st Cir.1978). *Cf. Local Division 589,* 666 F.2d 618 (holding that section 13(c) agreements do not override conflicting provisions of state law).

Here, the challenged role of the Department of Labor to arbitrate the Mt. Grace employees' dispute was created by the terms of the Special Section 13(c) Warranty which was part of the agreement between plaintiffs and Mt. Grace. Under *Jackson,* enforcement and interpretation of the warranty is a matter for the state courts—if the employees obtain a favorable award from the Department of Labor, they can enforce it only in the state forum. *Id.* 457 U.S. at 29 n. 13, 102 S.Ct. at 2210 n. 13 ("The union, of course, can pursue a contract action in state court"). *See also Local Division 732,* 667 F.2d at 1333 ("[T]here is no question but that there is a private cause of action for breach of a 13(c) agreement. That action is the common law action on a contract and it exists independent of congressional intent."). It follows that these challenges by parties to the section 13(c) agreement, seeking a declaration that the Department of Labor lacks the legal capacity to serve in the arbitral role provided in that agreement with respect to an ongoing contract dispute implicating plaintiffs' interests, must be raised in the courts of Massachusetts.

■ Plaintiffs contend that their action involves a federal question because what is at stake is agency action in excess of the statutory authorization contained in section 13(c) of the UMTA. *See Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 183, 3 L.Ed.2d 210 (1958); *Harmon v. Brucker,* 355 U.S. 579, 581, 78 S.Ct. 433, 434, 2 L.Ed.2d 503 (1958); *cf. Califano v. Sanders,* 430 U.S. 99, 107 n. 7, 97 S.Ct. 980, 985 n. 7, 51 L.Ed.2d 192 (1977) (noting that jurisdictional amount requirement was eliminated from 28 U.S.C. § 1331 to provide for broader nonstatutory review of federal administrative action). But the mere existence of a disputed question of federal law does not confer federal question jurisdiction. *McCorkle v. First Pennsylvania Banking & Trust Co.,* 459 F.2d 243, 250 (4th Cir.1972). Plaintiffs seek a declaratory judgment solely to secure release from contractual arrangements governed by state law into which they earlier entered. In this context, plaintiffs' allegation that the agency's contractual role exceeds federal statutory authorization amounts to no more than an anticipatory defense to the state enforcement action that may be expected if the employees should prevail before the arbitrator. Under the well-pleaded complaint rule, plaintiffs' challenge cannot serve as a basis for federal jurisdiction. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, ——, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). *See also Hernandez-Agosto v. Romero-Barcelo,* 748 F.2d 1, 2 (1st Cir.1984).

Put another way, plaintiffs are attempting to rely on the Declaratory Judgment Act to engage in a preemptive strike, attacking the Department of Labor's jurisdiction to avert the threat that a suit can be brought in the state courts by the Mt. Grace employees to enforce any favorable award issued. The law is well settled, that

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim.

This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law. *Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 248, 73 S.Ct. 236, 242–43, 97 L.Ed. 291 (1952). *See also Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848; *Skelly Oil,* 339 U.S. at 672, 70 S.Ct. at 879.

 It is true that the defensive issue plaintiffs raise—the alleged lack of authority by the Department of Labor to assume the role created for it in the contract—is a federal law question. But that will always be true of a "federal" defense to impending or threatened state proceedings. The state courts are empowered to decide federal statutory issues where appropriate. *See Hathorn v. Lovorn,* 457 U.S. 255, 266, 102 S.Ct. 2421, 2428, 72 L.Ed.2d 824 (1982); *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981). There is no general right to have federal law questions decided by a federal court absent some established basis for federal jurisdiction.

Here, invocation by the Mt. Grace employees of the disputes resolution procedure contained in the Special Section 13(c) Warranty was clearly governed by state law. Since the existence of a case and controversy between plaintiffs and the Department of Labor depended on such invocation, we think that federal question jurisdiction cannot attach. As neither the APA nor the Declaratory Judgment Act provides another independent ground for federal jurisdiction, *see Califano v. Sanders,* 430 U.S. at 107, 97 S.Ct. at 985; *Skelly Oil,* 339 U.S. at 671–72, 70 S.Ct. at 878–79, the case must be dismissed. This result is made all the more reasonable by the fact that Massachusetts law incorporates the requirements of the UMTA and makes them a "proper subject of collective bargaining and arbitration." It is logical that the case should go to the state courts.

Having held that there is no federal jurisdiction, we need not address defendants' remaining arguments that it enjoys arbitral immunity from a suit of this kind, *cf. Tamari v. Conrad,* 552 F.2d 778 (7th Cir. 1977), and that the challenged agency action was not final for review purposes, *see Federal Trade Commission v. Standard Oil Company of California,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).

*The judgment of the district court dismissing the complaint is affirmed.*