NASHOBA COMMUNICATIONS LIMITED PARTNERSHIP NO. 7, d/b/a Nashoba Cable Services, Plaintiff, Appellee,

v.

TOWN OF DANVERS, etc., et al.,
Defendants, Appellants.

No. 89–1338.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1989.
Decided Jan. 10, 1990.

David J. Doneski, Asst. Town Counsel, with whom Paul L. Kenny, Town Counsel, Danvers, Mass., and Francis P. McHugh, Asst. Town Counsel, were on brief, for defendants, appellants.

R. Bruce Beckner with whom Fleischman and Walsh, P.C., Washington, D.C., Gene K. Landy and Widett, Slater & Goldman, Boston, Mass., were on brief, for plaintiff, appellee.

Before TORRUELLA, SELYA and MAYER,* Circuit Judges.

MAYER, Circuit Judge.

The issue before us is whether the district court had jurisdiction to issue a declaratory judgment that the Town of Danvers' attempt to enforce an agreement by Nashoba Communications Limited Partnership No. 7 to freeze cable rates violated the Cable Communications Policy Act of 1984 (Cable Act), 47 U.S.C. § 543 (Supp. II 1984).

I.

On December 23, 1985, the Town of Danvers (Danvers) granted Nashoba Communications Limited Partnership No. 7 (Nashoba) a license to construct and operate a cable television system in the town. The license agreement incorporates Nashoba's amended application, in which it guaranteed its proposed installation, economy basic and super basic service rates would not rise for two years after the date of completion of the initial phase of construction. The license also provides that any future changes in the initial schedule of rates and charges stated in the amended application shall be in conformance with the Cable Act.

On June 14, 1988, Nashoba sent a letter to Danvers cable subscribers and the Board of Selectmen informing them that Nashoba intended to eliminate its economy basic service and raise the monthly rate for super basic cable service from $9.95 to $12.95. On July 1, 1988, Danvers' Town Counsel responded with a letter to Nashoba stating that, in view of the status of construction of the cable system, he believed that the proposed rate increase was premature un-

* Of the Federal Circuit, sitting by designation.

der the terms of the application and license. The letter also stated that the Town Counsel was recommending that the Board of Selectmen impose appropriate penalties or sanctions under the license and that they direct the Town Counsel to seek an injunction unless Nashoba agreed to withdraw the proposed rate increase.

Thereafter, on July 28, 1988, Nashoba filed this suit in United States District Court, seeking declaratory and injunctive relief from enforcement of the "rate freeze" provision of the license. The court held that it had subject matter jurisdiction because the action arose under federal law, and granted Nashoba declaratory judgment, but denied other relief. 703 F.Supp. 161 (D.Mass.1988). The court thought it did not need to address the "well-pleaded complaint" rule because Nashoba was asserting rights under the Cable Act rather than anticipating a federal law defense, citing *Centel Cable Television Co. v. Admiral's Cove Assoc.*, 835 F.2d 1359 (11th Cir.1988). 703 F.Supp. at 163. Because we believe the "well-pleaded complaint" rule is applicable and precludes jurisdiction, we reverse.

## II.

Subject matter jurisdiction in this case depends on 28 U.S.C. § 1331, which gives the district courts original jurisdiction over actions "aris[ing] under the Constitution, laws, or treaties of the United States." Whether a claim arises under federal law must be determined by application of the well-pleaded complaint rule. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986). The presence of a federal question is determined "from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914), *quoted in, Franchise Tax Board of Calif. v. Construction Laborers Vacation Trust for S. Calif.*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846–

47, 77 L.Ed.2d 420 (1983). "Thus, a federal court does not have jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise." *Franchise Tax Board*, 463 U.S. at 10, 103 S.Ct. at 2846. In most cases coming within the district courts' federal question jurisdiction, federal law either creates or implies the plaintiff's cause of action, but the Supreme Court has held that there may also be jurisdiction "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* at 9, 103 S.Ct. at 2846; *but see Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. at 808–09, 106 S.Ct. at 3232–33 (this statement must be read with caution).

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, cannot serve as a basis for "arising under" jurisdiction. It created a new remedy, but did not expand the jurisdiction of the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950), *cited in, Franchise Tax Board*, 463 U.S. at 15, 103 S.Ct. at 2849. In *Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 242–43, 97 L.Ed. 291 (1952), the Court instructed how to apply the "well-pleaded complaint" rule on a complaint for a declaratory judgment:

Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened state

cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

This court follows the *Wycoff* dictum. *Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d 229, 233 (1st Cir.1987); *Greenfield and Montague Transp. Area v. Donovan*, 758 F.2d 22, 26 (1st Cir.1985).

■ According to *Wycoff*, we first ascertain whether the federal right asserted by a declaratory judgment plaintiff is "nothing more than an anticipatory defense" in response to the defendant's threatened suit. *See Northeast Federal Credit Union v. Neves*, 837 F.2d 531, 535 (1st Cir. 1988). Then we look at the character of the impending state court action to see if there is a substantial federal question. *See id.* If the defendant's threatened suit arises solely or most importantly under state law, and the plaintiff's complaint merely anticipates a defense, there is no jurisdiction. *Id.; Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d 229 at 235; *Greenfield and Montague Transp. Area v. Donovan*, 758 F.2d at 26.

■ Nashoba's request for a declaratory judgment in this case is an attempt "to 'engage in a preemptive strike' aimed at exploding the state suit" threatened by Danvers in its July 1, 1988 letter. *Northeast Federal Credit Union v. Neves*, 837 F.2d at 535 (quoting *Greenfield and Montague Transp. Area v. Donovan*, 758 F.2d at 26). In its complaint, Nashoba alleged that "Danvers ... seeks an unlawful rate freeze in express contravention of the dictates of the Cable Act," and that "[t]he rate freeze sought to be imposed by Danvers constitutes content-neutral regulation of speech" in violation of the first and fourteenth amendments of the United States Constitution. It is apparent that these asserted federal rights are "in the nature of a defense to a threatened state cause of action." *Wycoff*, 344 U.S. at 248, 73 S.Ct. at 243. Our characterization of the situation in *Greenfield and Montague*

*Transp. Area v. Donovan*, 758 F.2d at 26, is apt here:

> Plaintiffs seek a declaratory judgment solely to secure release from contractual arrangements governed by state law into which they earlier entered. In this context, plaintiffs' allegation that the agency's contractual role exceeds federal statutory authorization amounts to no more than an anticipatory defense to the state enforcement action that may be expected.... Under the well-pleaded complaint rule, plaintiffs' challenge cannot serve as a basis for federal jurisdiction.

Focusing on the litigation threatened by Danvers, it is indisputable that any suit to enforce the rate freeze agreement would be based on contract under state, not federal, law. State common law creates the cause of action based on the cable license. Nashoba argues that an enforcement action by Danvers would necessarily implicate federal law because it would have to allege that Nashoba's rate increase was not in conformance with the Cable Act, as required by the license. We doubt it, but even if true that allegation would be merely incidental.

Nashoba relies on this statement in *Franchise Tax Board:* "Even though state law creates [plaintiff's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Id.*, 463 U.S. at 13, 103 S.Ct. at 2848. The significance of this comment was tempered in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. at 813, 106 S.Ct. at 3234–35, where the Court wrote that *Franchise Tax Board* "did not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." In deciding whether there was present a substantial question of federal law, *Merrell Dow* said that Congress' failure to set out a private remedy for violations of the federal statute at issue was "tantamount to a congressional conclusion that the presence of a claimed viola-

tion of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal question jurisdiction." *Id.* at 814, 106 S.Ct. at 3235.

■ Following this lead confirms our belief that an allegation about the Cable Act would not be a sufficiently substantial element of an enforcement action by Danvers to sustain federal jurisdiction. Nashoba concedes, as it must, that there is no explicit right to sue to block rate action by a franchising authority set out in the Act. And, as we explain below, there is none implied. This makes the federal issue insubstantial. Therefore, because Danvers needs to allege only that a rate increase violates a provision of a state law contract, and perhaps also is inconsistent with the Cable Act, and Nashoba could answer with the converse insubstantial federal defense, we conclude there is no right or immunity created by federal law which is an essential element of Danvers' threatened cause of action. *Gully v. First National Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

### III.

To sustain the district court's subject matter jurisdiction, Nashoba also argues that 1) following *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), there is an implied cause of action under the Cable Act, 47 U.S.C. § 543(a) (Supp. II 1984), to block impermissible rate regulation by a franchising authority, and 2) under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), there is a federal cause of action to enjoin state regulation of cable rates because of federal pre-emption. Neither of these theories applies here.

### A.

■ Contrary to Nashoba, there is no implied right of action in favor of cable companies to enforce the rate regulation

provisions of the Cable Act. *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088, set out the factors relevant to determining whether a private remedy is implicit in a statute not expressly providing one:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [Citations omitted]

*See also California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1778–79, 68 L.Ed.2d 101 (1981); *Cannon v. University of Chicago,* 441 U.S. 677, 689–709, 99 S.Ct. 1946, 1952–64, 60 L.Ed.2d 560 (1979).

Even if cable companies are intended beneficiaries of the Cable Act, however incidentally, the other three factors are not satisfied. There is no explicit or discernable implicit intent to create a cause of action in favor of cable companies to enforce 47 U.S.C. § 543(a), which limits regulation of cable service rates.** On the contrary, we infer from other provisions of the Act that Congress did not so intend.

First of all, section 556(b) provides: "Nothing in [the Cable Act] shall be construed to restrict a State from exercising jurisdiction with regard to cable services consistent with this [Act]." This suggests that Congress did not intend to deprive state courts of jurisdiction over cases involving issues under the Cable Act. *Cf. Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. at 814, 106 S.Ct. at

---

** 47 U.S.C. § 543(a): Any Federal agency or State may not regulate the rates for the provision of cable service except to the extent provided under this section. Any franchising authority may regulate the rates for the provision of cable service, or any other communications service provided over a cable system to cable subscribers, but only to the extent provided under this section.

3235. Secondly, the Act expressly provides for causes of action in specific circumstances. In particular, cable operators adversely affected by a final decision of a franchising authority affecting modification or renewal of a franchise may sue under 47 U.S.C. § 555 (Supp. II 1984), and persons aggrieved by the failure or refusal of a cable operator to make channel capacity available may sue under 47 U.S.C. § 532(d) (Supp. II 1984). It would be inconsistent with the legislative scheme to imply additional federal remedies which Congress apparently did not intend to supply. *Cf. United States v. Fausto*, 484 U.S. 439, 447, 108 S.Ct. 668, 673, 98 L.Ed.2d 830 (1988). Finally, cable systems are essentially the concern of local governments and even the Cable Act recognizes the continued state interest in how they operate.

■ Contrary to Nashoba, the Cable Act does not give cable companies a right without a remedy. Even if the Act pre-empts state cable rate regulation under certain circumstances, "there is no reason to think that the state courts cannot decide federal statutory issues in a satisfactory manner" in those areas left open to them. *Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d at 236 (citing *Greenfield and Montague Transp. Area v. Donovan*, 758 F.2d at 27). The supremacy clause of the Constitution, which is the basis for the pre-emption argument, is concerned with promoting the supremacy of federal law, not federal courts. *See Cablevision of Boston Ltd. Partnership v. Flynn*, 710 F.Supp. 23, 26 (D.Mass.), *aff'd*, 889 F.2d 377 (1st Cir.1989).

### B.

We are also unpersuaded by the *Ex parte Young* argument. Nashoba says the district court had jurisdiction under the theory explained in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983):

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. See *Ex parte Young*, 209 U.S. 123, 160–162 [28 S.Ct. 441, 454–455, 52 L.Ed. 714] (1908). A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Shaw* found federal jurisdiction to decide whether provisions of the New York Human Rights and Disability Benefits Laws were pre-empted by the federal Employee Retirement Income Security Act of 1974 (ERISA). Nashoba also notes that in *Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d at 236, this court acknowledged federal jurisdiction over actions seeking to declare state regulatory systems invalid because of federal pre-emption.

■ This case does not fit under *Ex parte Young* to except it from the general rule declared in *Wycoff*, 344 U.S. at 248, 73 S.Ct. at 242–43, that there is no federal jurisdiction over a declaratory judgment action that in essence asserts a federal defense to a state claim. "Federal preemption is ordinarily a federal defense to the plaintiff's suit", except where the federal law is intended to fully displace that of the state. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Danvers and Nashoba entered into a contractual agreement as a result of a competitive bidding process. The town asked the cable license applicants whether they would honor a rate freeze for at least the first two years of operation; Nashoba said yes, and won the contract, Danvers intends only to enforce this aspect of the license agreement, not to assert any other authority affecting Nashoba's rates. This is not regulation, it is enforcement of a contractual commitment Nashoba proposed unilaterally, in full awareness of the Cable Act.

Danvers' threat to enforce the rate freeze agreement is dramatically different from the state regulation in the other cases cited by Nashoba to support its pre-emption argument. In *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694,

81 L.Ed.2d 580 (1984) (arising prior to the Cable Act), the plaintiff claimed that the Oklahoma constitution and statutes were pre-empted by federal regulation of cable television systems. In *Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323 (2d Cir.1982), *aff'd sub nom., Arcudi v. Stone & Webster Engineering Corp.*, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), the plaintiff claimed that a provision of Connecticut's Workers Compensation Act was preempted by ERISA. In *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), the plaintiff claimed that a California statute and a provision of its administrative code were pre-empted by the Federal Meat Inspection Act. The pre-emption challenge to the state enactments in those cases supported the jurisdiction of the federal courts because of the apparent pervasiveness of the superseding federal legislation. But the difference between Danvers' enforcement of a limited contractual provision and a comprehensive scheme to scrutinize and pass on future changes in rates and services, absent here, is a difference as profound as it is dispositive.

REVERSED.