USCA1 Opinion

 

 March 26, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-2260 STERLING SUFFOLK RACECOURSE LIMITED PARTNERSHIP, Plaintiff, Appellant, v. BURRILLVILLE RACING ASSOCIATION, INC., Defendant, Appellee. _________________________ ERRATA SHEET The opinion of this Court issued March 25, 1993, is amended as follows: Remove duplicated "BEFORE" from cover page of opinion. BEFORE March 25, 1993 [SYSTEMS NOTE: For version of this opinion with the appendix included, please contact the Clerk's Office, United States Court of Appeals for the First Circuit. This version of the opinion DOES NOT contain the appendix.] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-2260 STERLING SUFFOLK RACECOURSE LIMITED PARTNERSHIP, Plaintiff, Appellant, v. BURRILLVILLE RACING ASSOCIATION, INC., Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ _________________________ Before Selya, Cyr and Stahl, Circuit Judges. ______________ _______________________ E. Randolph Tucker, with whom Michael D. Ricciuti, David B. ___________________ ___________________ ________ Crevier, Joshua M. Davis, and Hill & Barlow were on brief, for _______ ________________ ______________ appellant. Kent E. Mast, with whom Peter J. McGinn, Tillinghast Collins ____________ _______________ ___________________ & Graham, and Kilpatrick & Cody were on brief, for appellee. ________ _________________ _________________________ _________________________ SELYA, Circuit Judge. In this appeal, we confront two SELYA, Circuit Judge. _____________ issues of novel impression at the appellate level. First, we must determine whether the Interstate Horseracing Act (IHA), 15 U.S.C. 3001-3007 (1988), the full text of which is set out in the appendix, contains an implied private right of action in favor of racetracks situated within sixty miles of a display track, i.e., a track that accepts interstate off-track wagers on ____ races to be run at distant tracks and then simulcasts the actual races. Second, we must determine whether certain alleged violations of the IHA comprise a pattern of racketeering activity falling within the ambit of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1961-1968 (1988 & Supp. III 1991). Believing, as we do, that the court below correctly answered both inquiries in the negative, we affirm. I. AT THE STARTING GATE I. AT THE STARTING GATE The relevant facts are not in dispute. Plaintiff- appellant Sterling Suffolk Racecourse Limited Partnership (Suffolk) conducts live horseracing at Suffolk Downs, a track in the metropolitan Boston area. Approximately fifty miles away, in Lincoln, Rhode Island, defendant-appellee Burrillville Racing Association, Inc. (Lincoln) operates a greyhound track (Lincoln Greyhound Park) and an off-track betting (OTB) office, see 15 ___ U.S.C. 3002(8), for, inter alia, accepting interstate off-track _____ ____ wagers, see 15 U.S.C. 3002(3). This means, in short, that ___ Lincoln accepts bets on horseraces to be run at distant tracks and, employing telephone and wire linkages, effectively places 3 these wagers in the host track's parimutuel pool. When a race is run, closed circuit television transmission enables Lincoln's patrons to witness it. Lincoln then settles with the bettors, pays a percentage to the host track, and retains the balance. While this form of wagering is legal under the relevant laws of all states involved here, 15 U.S.C. 3004(a) prohibits such wagering at OTB offices unless three parties consent: (1) the track which conducts the live race; (2) the racing commission having jurisdiction to regulate racing within the state where the live race occurs; and (3) the racing commission having jurisdiction over race wagering in the state where the simulcast occurs.1 The host racing association, in turn, must obtain the consent of the trade association representing the owners of horses running in the live race before signalling its acquiescence.2 See id. Lincoln procures the consent of these ___ ___ parties for every race on which it accepts wagers. A separate subsection of the IHA also requires OTB offices to obtain the approval of "all currently operating tracks within 60 miles" or, if there are no such tracks, "the closest currently operating track in an adjoining State," 15 U.S.C. 3004(b)(1), before accepting interstate off-track wagers. It is ____________________ 1In the parlance of the IHA, these three entities are called the "host racing association," "host racing commission," and "off-track racing commission," respectively. See 15 U.S.C. ___ 3002(9)-(11). We refer the reader to the statutory appendix for more precise definitions of each term. 2The trade association is called the "horsemen's group." See 15 U.S.C. 3002(12). ___ 4 no secret that Lincoln regularly violates this provision by accepting wagers against Suffolk's wishes.3 Disgruntled at being shut out in this fashion, Suffolk sued Lincoln in the United States District Court for the District of Rhode Island. It sought to curtail Lincoln's practice of accepting wagers on races run at out-of-state tracks. Suffolk advanced two theories, asseverating that Lincoln's activities transgressed the IHA and also constituted a pattern of indictable activity under federal gambling laws, see, e.g., 18 U.S.C. ___ ____ 1084(a) (1988), and, therefore, justified injunctive relief under RICO. See 18 U.S.C. 1961(1), 1962(a). The district court ___ rejected this two-pronged assault. It held that Suffolk lacked standing to assert a claim under the IHA and that Lincoln's acceptance of interstate off-track wagers without Suffolk's blessing was not the stuff from which a RICO suit could be fashioned. See Sterling Suffolk Racecourse Ltd. Partnership v. ___ _____________________________________________ Burrillville Racing Ass'n, Inc., 802 F. Supp. 662, 669-71 (D.R.I. _______________________________ 1992). Hence, the district court denied Suffolk's prayer for injunctive relief and granted Lincoln's motion for summary judgment. Id. at 673. This appeal ensued. ___ II. OFF AND RUNNING II. OFF AND RUNNING We devote our initial explicatory efforts to the leading question in the case: Does the IHA give so-called "60- mile tracks," i.e., tracks operating within sixty miles of an OTB ____ ____________________ 3In December 1991, Lincoln sought Suffolk's approval, but made no sufficiently spectacular bid. Hence, the parties failed to reach an accord. 5 office, an implied right of action for injunctive relief? Because this issue is purely legal, we consider it de novo. See, __ ____ ___ e.g., Liberty Mutual Ins. Co. v. Commercial Union Ins. Co., 978 ____ ________________________ __________________________ F.2d 750, 757 (1st Cir. 1992). In determining whether a private cause of action is implied in a federal statute, a court's central focus must be on congressional intent. See, e.g., Karahalios v. National Fed'n of ___ ____ __________ _________________ Fed. Employees, 489 U.S. 527, 532-33 (1989) ("Unless . . . _______________ congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.") (citation and internal quotation marks omitted); Stowell v. Ives, 976 F.2d 65, 70 n.5 (1st Cir. 1992) _______ ____ ("There is a presumption against implied rights of action a presumption that will endure unless the plaintiff proffers adequate evidence of a contrary congressional intent."). To discern this intent, courts employ the customary tools of statutory interpretation, see, e.g., Thompson v. Thompson, 484 ___ ____ ________ ________ U.S. 174, 179 (1988); Touche Ross & Co. v. Redington, 442 U.S. __________________ _________ 560, 575-76 (1979), frequently asking, however, three questions which often have special salience in connection with implied rights of action. These queries are: (1) Is the plaintiff one of the class for whose especial benefit the legislation was enacted? (2) Is the remedy sought consistent with the underlying purposes of the legislative scheme? (3) Is the cause of action one traditionally relegated to state law? See Thompson, 484 U.S. at ___ ________ 6 179; Cort v. Ash, 422 U.S. 66, 78 (1975); Latinos Unidos de ____ ___ __________________ Chelsea v. Secretary of HUD, 799 F.2d 774, 792 (1st Cir. 1986).4 _______ ________________ Here, the district court followed this roadmap expertly. See Sterling, 802 F. Supp. at 666-69. Its opinion is ___ ________ astute. Its views are articulated with clarity and precision. It builds upon other persuasively reasoned caselaw reaching the identical result. See, e.g., New Suffolk Downs Corp. v. ___ ____ __________________________ Rockingham Venture, Inc., 656 F. Supp. 1190, 1194 (D.N.H. 1987). _________________________ Under these auspicious circumstances, we see no need to reinvent the wheel. Rather, we affirm the lower court's holding that the IHA implies no private right of action in favor of 60-mile tracks for essentially the reasons elucidated in the opinion below. We pause, however, to add some observations and clarifications. First: Although we concur in Judge Lagueux's bottom- First: _____ line assessment that the IHA does not give 60-mile tracks a private right of action, and in his related evaluation of two of the three Cort factors the remedy that Suffolk seeks seems to ____ be at odds with the IHA's underlying purposes and the cause of action questions what activities may lawfully be carried out at a state-regulated gambling facility, a matter traditionally ____________________ 4To be sure, the Cort Court also asked a fourth question: ____ Is there evidence of legislative intent to create or deny a private right of action? See Cort, 422 U.S. at 78; see also ___ ____ ___ ____ Latinos Unidos, 799 F.2d at 792. The Justices have since made ______________ clear, however, that the fourth question is really a tote board for tallying the answers to all the other inquiries and, therefore, need not be considered separately. See Thompson, 484 ___ ________ U.S. at 179; California v. Sierra Club, 451 U.S. 287, 293 (1981); __________ ___________ see also Royal Business Group, Inc. v. Realist, Inc., 933 F.2d ___ ____ ___________________________ ______________ 1056, 1060 (1st Cir. 1991). 7 relegated to state law we think it is advisable to begin by remarking a point of disagreement. Unlike Judge Lagueux, 802 F. Supp. at 667, we believe Congress, even though it did not choose to confer a private right of action, see infra, nevertheless ___ _____ designed section 3004(b)(1)(A) for the benefit of 60-mile tracks. See Cort, 422 U.S. at 78; see also Royal Business Group, Inc. v. ___ ____ ___ ____ __________________________ Realist, Inc., 933 F.2d 1056, 1061-62 (1st Cir. 1991) (discussing _____________ "especial benefit" test). The especial benefit inquiry in implied right of action cases need not be a search for a single class of plaintiffs the class which the entire statute is most directed toward assisting. Rather, different parts of a statutory scheme can be aimed at benefitting different classes of persons. See, e.g., Cohen v. ___ ____ _____ Massachusetts Bay Transp. Auth., 647 F.2d 209, 212 (1st Cir. _________________________________ 1981) (noting that a particular section of a statute primarily benefitted consumers while a different section of the same statute primarily benefitted transit workers); Comtronics, Inc. ________________ v. Puerto Rico Tel. Co., 553 F.2d 701, 705 (1st Cir. 1977) ______________________ (discussing a statute that especially benefitted two separate groups). The inquiry, then, focuses on whether any language in ___ the statute sufficiently indicates a motivating congressional purpose to benefit the class in question as opposed to, say, a mere congressional expression of knowledge anent, or passive approval of, a tangential benefit. See California v. Sierra ___ __________ ______ Club, 451 U.S. 287, 294 (1981); Cannon v. University of Chicago, ____ ______ _____________________ 441 U.S. 677, 690-94 (1979). Properly conducted, this type of 8 investigation weeds out statutes which protect a general public interest and only incidentally create advantages for particular people. See, e.g., Cannon, 441 U.S. at 690; Arroyo-Torres v. ___ ____ ______ _____________ Ponce Fed. Bank, 918 F.2d 276, 278 (1st Cir. 1990). _______________ When we shine the light of this understanding on the IHA, we think that 60-mile tracks meet the "especial benefit" criterion. Section 3004(b)(1)(A) requires an OTB office to procure the approval of all 60-mile tracks before accepting interstate off-track wagers. This requirement, by its own terms, adequately evinces congressional intent to safeguard the interests of 60-mile tracks and, therefore, must be viewed as redounding to their especial benefit. The legislative history fortifies this conclusion. See, e.g., S. Rep. No. 1117, 95th ___ ____ Cong., 2d Sess. 4-5 (1978), reprinted in 1978 U.S.C.C.A.N. 4144, _________ __ 4147-48. No more is exigible. See Cannon, 441 U.S. at 690-94 ___ ______ (finding especial benefit conferred by language more general than that contained in the IHA). Still, we hasten to add that this fact alone does not strike the gold. In this case, the especial benefit element is at most a dim counterpoint to the bold-faced evidence of congressional intent intricately interwoven into the IHA's language and structure. Therefore, the district court's miscalculation constitutes harmless error. Second: We turn now to the other indicators of Second: ______ legislative intent. It is a familiar precept that, in cases of statutory interpretation, the language of the statute enjoys 9 preeminence. See Northwest Airlines, Inc. v. Transport Workers, ___ _________________________ _________________ 451 U.S. 77, 91 (1981); Transamerica Mortgage Advisors, Inc. v. _____________________________________ Lewis, 444 U.S. 11, 15-16; Touche Ross, 442 U.S. at 568. Here, _____ ___________ notwithstanding the especial benefit point, the words of the statute speak strongly against implying a private right of action. We explain briefly. When a statute expressly provides remedies, courts must be extremely reluctant to expand its sweep by augmenting the list of prescribed anodynes. To the exact contrary, a court confronted with such a situation should ordinarily conclude that the legislature provided precisely the redress it considered appropriate. See, e.g., Karahalios, 489 U.S. at 533 (collecting ___ ____ __________ cases); Middlesex County Sewerage Auth. v. Sea Clammers, 453 U.S. _______________________________ ____________ 1, 14-15 (1981); Nashoba Communications, Ltd. v. Town of Danvers, ____________________________ _______________ 893 F.2d 435, 440 (1st Cir. 1990). This is such a case. The IHA explicitly identifies the parties entitled to bring actions for damages or injunctions, see 15 U.S.C. 3006 and 60-mile tracks ___ are not among them. When discussing the potential liability of violators and outlining the damages they must pay, the IHA identifies as potential recipients of damage awards only these same parties. See 15 U.S.C. 3005. And, moreover, the statute ___ employs a damage calculation formula, see id., that is totally ___ ___ irrelevant to entities like 60-mile tracks. It strains credulity to argue that these serial omissions are serendipitous. The IHA's venue and jurisdictional provisions point in the same direction. The statute provides that venue is 10 appropriate only in a district in which either the host track or the display track is located. See 15 U.S.C. 3007(b). It ___ further provides that jurisdiction is appropriate only in the courts of the host state or the off-track state.5 See 15 U.S.C. ___ 3007(c). In particular contexts, a statute's silence can be informative. So it is here: the absence of any provision for venue or jurisdiction based on the location of an aggrieved 60- mile track tells a tale. In sum, given the language of the statute what the IHA says and what it shies away from saying there is no sure footing for the implication of a private right of action favoring non-consenting 60-mile tracks. Third: The structure of a statute can also be of Third: _____ inestimable value in its interpretation. See Crandon v. United ___ _______ ______ States, 110 S. Ct. 997, 1001 (1990); Greenwood Trust Co. v. ______ ____________________ Massachusetts, 971 F.2d 818, 824 (1st Cir. 1992), cert. denied, _____________ _____ ______ 113 S. Ct. 974 (1993). In this instance, the statute's structure seems highly significant. The provision requiring OTB offices to secure the approbation of the horsemen's group, host racing association, host racing commission, and off-track racing commission is set conspicuously apart from the provision requiring display tracks to seek the approval of 60-mile tracks. Compare 15 U.S.C. 3004(a) with 15 U.S.C. 3004(b). _______ ____ The language of the statutory provisions bolsters the ____________________ 5The "off-track State" is the state in which the "interstate off-track wager is accepted." 15 U.S.C. 3002(6). 11 conclusion that these structural differences are pregnant with meaning. Congress phrased the former provision as an absolute condition precedent to off-track wagering across state lines, see ___ 15 U.S.C. 3004(a) (an "interstate off-track wager may be accepted by an off-track betting system only if consent is ____ __ obtained from [four entities]") (emphasis supplied), but phrased the latter provision merely as a directive to a private party. See 15 U.S.C. 3004(b)(1) ("any off-track betting office shall ___ obtain the approval of [tracks within a 60-mile radius]"). As the Court has indicated, a statutory provision phrased as a command to specific people, like the one upon which Suffolk rests its hopes, is unlikely to breed an implied private right of action because such language usually evinces a congressional concern with instructing the putative violator rather than with providing a remedy to the putative victim. See, e.g., ___ ____ Universities Research Ass'n v. Coutu, 450 U.S. 754, 772-73 & n.23 ___________________________ _____ (1981); Cannon, 441 U.S. at 690-93. ______ Fourth: In this case, the whole is certainly no less Fourth: ______ than the sum of its constituent parts. The language of almost every section of the IHA, and the structure of the pivotal provisions, strongly suggest that Congress did not intend to provide disapproving 60-mile tracks with a private right of action against display tracks. Having discerned so striking an indication of congressional intent, deeply rooted in the text of the statute itself, we find Suffolk's reliance on fragmentary excerpts from the legislative history to be little more than 12 grains of desert sand in the teeth of a haboob. Even clear legislative history and the history here is less than pellucid must yield to a contrary implication easily derivable from a statute's text. See Puerto Rico Dep't of Consumer Affairs v. ___ _______________________________________ Isla Petroleum Corp., 485 U.S. 495, 501 (1988); see also 2A ______________________ ___ ____ Norman J. Singer, Sutherland Statutory Construction 46.04, ___________________________________ 46.07 (5th ed. 1992) (concluding that courts, when construing statutes, must adhere primarily to language and structure). Fifth: We reject appellant's plea that denying an Fifth: _____ implied right of action will render nugatory the statutory provisions dealing with 60-mile tracks. Appellant's reliance upon a finding of especial benefit, see supra pp. 6-8, to prove ___ _____ this point is misplaced. That Congress purposely sought to confer a benefit on entities like Suffolk does not imply that such was the only or even the overriding motive for enacting the statute. See, e.g., Cort, 422 U.S. at 81-82 & n.13; Cohen, ___ ____ ____ _____ 647 F.2d at 212. Nor does Congress's intent to benefit 60-mile tracks inevitably imply that Congress deemed a private right of action to be a necessary or advisable means of accomplishing its goal. See Coutu, 450 U.S. at 771 (explaining that "[t]he fact ___ _____ that an enactment is designed to benefit a particular class does not end the inquiry; instead it must also be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation"); accord Daily Income ______ ____________ Fund, Inc. v. Fox, 464 U.S. 523, 540-41 (1984); Transamerica, 444 __________ ___ ____________ U.S. at 24. 13 By making manifest that OTB offices operating without the approval of 60-mile tracks are flouting federal law, Congress supplied other parties with a potential defense should they cancel contracts with the offending facility or withhold consent to interstate off-track wagering at such a facility. Cf., e.g., ___ ____ Alabama Sportservice, Inc. v. National Horsemen's Benevolent & ___________________________ _________________________________ Protective Ass'n, Inc., 767 F. Supp. 1573, 1579-80 (M.D. Fla. ______________________ 1991) (suggesting that withholding of consent on reasonable grounds would not be an actionable restraint of trade). Moreover, creating the framework for assertion of such a defense benefits the 60-mile tracks by furnishing an incentive for display tracks to comply with the requirement.6 See generally ___ _________ Daily Income Fund, 464 U.S. at 535, 541 & n.11 (explaining that __________________ the statutory objective to benefit a class may be served by giving other parties the right to sue). Similarly, display tracks and 60-mile tracks are frequently located in the same state and, therefore, subject to the same regulatory authority. Where that occurs, the IHA has the effect of permitting the racing commission either to insist on pre-approval or to work out some other satisfactory solution. Even when a 60-mile track does not have this home field advantage, the off-track racing commission may well be persuaded to take regulatory action against a display track which, like Lincoln, scorns a federal ____________________ 6Lincoln itself has been hoist on this petard. Several organizations withdrew consent because of Lincoln's failure to obtain Suffolk's approval, thereby depriving Lincoln of the right to accept wagers on races originating at the non-consenting tracks. 14 mandate. Cf., e.g., CBS Inc. v. FCC, 453 U.S. 367, 373-75 ___ ____ _________ ___ (1981); FCC v. Pacifica Foundation, 438 U.S. 726, 730-31 (1978). ___ ___________________ In sum, our holding that no private right of action exists does not sanction blatant disregard of federal law or render the approval requirement without worth to the 60-mile tracks. It merely ensures that negotiations for a green light from market-area tracks will occur in the context Congress envisioned, with neither party completely beholden to the other. After all, were we to infer a right of action along the lines that Suffolk delineates, we would hand 60-mile tracks an important veto power over the operation of nearby OTB offices and, in the bargain, tilt the delicate balance Congress so painstakingly constructed. We will not belabor the point. In the long run, Congress may well have thought that the indirect benefits flowing from a right of approval that had little bite were preferable to the potential vices involved in granting 60-mile tracks the right to gnaw at will. See generally Jerry L. Mashaw, Textualism, ___ _________ ___________ Constitutionalism, and the Interpretation of Federal Statutes, 32 _____________________________________________________________ Wm. & Mary L. Rev. 827, 842 (1991) (suggesting that implied private rights of action can eclipse the important role of agencies in weighing conflicting concerns); Frank H. Easterbrook, Foreword: The Court and the Economic System, 98 Harv. L. Rev. 4, ____________________________________________ 45-51 (1984) (warning that courts, in venturing to alter the particular personality which Congress has chosen to embody in statutes, may shift the balance of entitlements and sire 15 overdeterrence). III. THE HOME STRETCH III. THE HOME STRETCH We turn next, albeit briefly, to the question of whether appellant, on these facts, framed a cognizable claim under the RICO statute. Suffolk argues that Lincoln's unapproved acceptance of wagers constitutes a pattern of indictable activity under federal gambling laws and, therefore, violates the RICO statute. The court below did not agree. See Sterling, 802 F. ___ ________ Supp. at 669-70. We think the lower court reached the right result: Lincoln's acceptance of wagers on distant races without Suffolk's consent does not constitute a crime which can carry the weight of a RICO complaint.7 RICO targets the use, in connection with any enterprise affecting interstate commerce, of income derived "from a pattern of racketeering activity." 18 U.S.C. 1962(a). The term "racketeering activity" is defined in 18 U.S.C. 1961(1). Included in the definition is any act indictable under 18 U.S.C. 1084, a statute which criminalizes, inter alia, utilization of _____ ____ a wire facility for the "transmission in interstate . . . commerce of . . . information assisting in the placing of bets . . . on any sporting event." 18 U.S.C. 1084(a). Conceding, withal, that wagering of the sort transacted at Lincoln's facility is permissible under the relevant laws of all interested states, appellant pins its RICO-related hopes on section 1084(a). ____________________ 7Here, again, the issue is purely legal and appellate review is plenary. 16 But, section 1084(a) carves out a specific exception for circumstances in which wagering on a sporting event is legal in both the sending state and the receiving state. See 18 U.S.C. ___ 1084(b). That exception applies here. Leaving the IHA to one side, appellant has no case. The legislative history of section 1084 shows beyond peradventure that Congress enacted section 1084(b) for the express purpose of allowing off-track betting in venues where states chose to legalize such activity (thereby reserving to individual states some measure of control over what forms of gambling could occur within their borders). See H.R. Rep. No. 967, 87th Cong., 1st ___ Sess. (1961), reprinted in 1961 U.S.C.C.A.N. 2631, 2632-33. _________ __ Thus, given that the operation of Lincoln's OTB office does not offend relevant state law, we have no non-IHA-related reason to declare that the actions complained of in this suit constitute indictable conduct under section 1084. Appellant tells us that the IHA makes a dispositive difference. But, we do not understand how this can be true. All available evidence indicates that Congress intended the IHA to have purely civil consequences. For instance, the IHA's enforcement and remedies sections specifically exclude the possibility of governmental involvement and/or the specter of criminal penalties. See 15 U.S.C. 3005, 3006. The section ___ dealing with jurisdiction and venue refers only to "civil action[s]." 15 U.S.C. 3007. The legislative history teaches that Congress intended there to "be no Government enforcement" of 17 the IHA; and further intended that "[a]ny person accepting an interstate wager other than in conformity with the act will instead be civilly liable in a private action for damages to the _______ host State, the host racing association, and the applicable horsemen's group." S. Rep. No. 1117, 1978 U.S.C.C.A.N. at 4146 (emphasis supplied); see also H.R. Rep. No. 1733, 95th Cong., 2d ___ ____ Sess. 3 (1978) (same). In the face of this imposing array, Suffolk's argument that the IHA serves as a fulcrum to criminalize Lincoln's activities must fail. To recapitulate, we think it clear that Congress, in adopting section 1084, did not intend to criminalize acts that neither the affected states nor Congress itself deemed criminal in nature. Lincoln's acts fall into this chiaroscuro category perhaps not right, but certainly not felonious. It follows that these acts, not indictable under section 1084, cannot constitute a pattern of racketeering activity within RICO's definitional parameters. Hence, the court below properly granted summary judgment on the RICO count.8 IV. AT THE WIRE IV. AT THE WIRE We need go no further. Simply stated, Congress's discernible intent precludes us from inferring a private right of ____________________ 8The district court held, in the alternative, that RICO does not confer a right to sue for equitable relief on private plaintiffs and that, therefore, even if Suffolk had raised a colorable RICO claim, no injunction could issue. See Sterling, ___ ________ 802 F. Supp. at 670-71; see also Lincoln House, Inc. v. Dupre, ___ ____ ___________________ _____ 903 F.2d 845, 848 (1st Cir. 1990) (expressing doubts about the availability of such relief). Because we affirm, without caveat, the district court's primary holding concerning the RICO claim, we do not address this alternate ground. 18 action in appellant's favor. Because this is so, and because appellant's complaint likewise fails to limn a cognizable racketeering claim, the judgment below, to invoke the name of a very famous racehorse, must be Affirmed. Affirmed. ________ 19